10 A.3d 1230

Diane L. FASTUCA, Appellant

v.

L.W. MOLNAR & ASSOCIATES, Louis W. Molnar, Jr.
and Mary Lou Molnar, individually and t/d/b/a
L.W. Molnar & Associates, Appellees.

Supreme Court of Pennsylvania.

Argued Sept. 16, 2009.

Decided Jan. 18, 2011.

188

190

William Shaw Stickman, IV, Del Sole Cavanaugh Stroyd, L.L.C., Samuel P. Kamin, Pittsburgh, David Alan Wolf, Goldberg, Kamin & Garvin, Arthur H. Stroyd, Jr., Del Sole Cavanaugh Stroyd, L.L.C., for Diane L. Fastuca.

Kevin Patrick Lucas, Manion McDonough & Lucas, P.C., Pittsburgh, Cathy A. Chromulak, Chromulak & Associates, L.L.C., for L.W. Molnar & Associates, et al.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

## *OPINION*

Justice TODD.

In this case, we review a trial court's termination of a common law arbitration proceeding after the arbitrator has entered "findings" which do not resolve all outstanding issues between the parties. Following our review, we conclude the

arbitrator's interim "findings" in this case do not constitute an award within the meaning of Section 7341 of our Commonwealth's Uniform Arbitration Act,[1] and, thus, that the trial court had no authority under that section to review such findings. Moreover, we determine that the trial court did not possess inherent equitable authority to end the arbitration proceedings before the arbitrator made a final award. Consequently, we affirm the order of the Superior Court.

This case arises out of a contentious dissolution of a familial partnership. The following sequence of events gave rise to the present appeal, as aptly described by the Superior Court in its opinion,[2] and further gleaned from the record in this matter. In 1972, Appellant, Diane L. Fastuca, in conjunction with her siblings, Louis W. Molnar, Jr. and Mary Lou Molnar, formed L.W. Molnar and Associates (collectively "Appellees"). The partnership managed real estate investment properties, and it endured for nearly 26 years with no major disputes among the partners until 1998 when Appellant became disenchanted with the way partnership revenues were being divided. Although Appellant tried, with the aid of counsel, to work out her dispute with the other partners for nearly five years thereafter, no amicable resolution could be reached. Accordingly, she sent Appellees a letter on September 20, 2003, notifying them of her intent to dissolve the partnership under Section 8353 of our Commonwealth's Uniform Partnership Act,[3] 15 Pa.C.S.A. § 8353, and requesting that her partnership share be distributed to her.

On November 17, 2003, Appellant filed a complaint in equity in the Court of Common Pleas of Allegheny County which requested the dissolution and winding up of the partnership, and also the issuance of a preliminary injunction to prevent any dissipation of partnership assets. In response, Appellees filed a motion to compel arbitration pursuant to the partnership agreement, which provides in relevant part:

1. Uniform Arbitration Act of Oct. 5, 1980, P.L. 693, No. 142, codified at 42 Pa.C.S.A. §§ 7301–7362.

2. *Fastuca v. Molnar*, 950 A.2d 980 (Pa.Super.2008).

3. Act of Dec. 21, 1988, P.L. 1444, No. 177, § 103.

14. *Arbitration.* Any controversy or claim arising out of or relating to this Agreement or the breach thereof shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association, and judgment upon an award rendered may be entered in any court having jurisdiction thereof.

Partnership Agreement, 9/11/72, at ¶ 14 (R.R. at 189a).

On February 4, 2004, the presiding motions judge of Allegheny County, then-Judge, now former-Justice, Cynthia Baldwin, heard argument on Appellant's motion and, thereafter, entered an order denying Appellant's request for a preliminary injunction and dismissing her complaint in equity, without prejudice. The order also directed the parties to proceed to arbitration on "all issues raised in [Appellant's] Motion for Preliminary Injunction and [Appellant's] Complaint in Equity, in accordance with the terms of the partnership agreement among the parties." Trial Court Order, 2/4/04 (R.R. at 64a).

The parties mutually selected David B. Fawcett, Esquire ("arbitrator") to conduct the arbitration under the rules of the American Arbitration Association. By agreement of the parties, on September 15, 2004, the arbitrator entertained arguments and received written submissions from them outlining their respective positions as to the legal issues surrounding the dissolution of the partnership.[4] On September 17, 2004, the arbitrator issued a document entitled "Findings of Arbitrator" in which he made the following determinations relevant to this appeal. The arbitrator found that Appellant had validly exercised her right to dissolve the partnership under Section 8353(2)[5] of the Uniform Partnership Act, which allows

4. There was no transcript made of this proceeding.

5. Section 8353(2) provides:

   § 8353. Causes of dissolution
   Dissolution is caused:

   *      *      *

   (2) In contravention of the agreement between the partners, where the circumstances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time.

   15 Pa.C.S.A. § 8353(2).

a partner to dissolve a partnership even if done in violation of the partnership agreement. Findings of Arbitrator, 9/17/04, ¶ 3 (R.R. at 346a). However, the arbitrator also found that, because this dissolution had contravened the terms of the written partnership agreement, which the arbitrator had determined to be the law of the partnership between the parties, he concluded Appellees had a right to continue the business and, also, to receive damages from Appellant for breach of contract. *Id.* at ¶ 7 (R.R. at 347a). Therefore, the arbitrator required Appellees to pay Appellant the value of her interest in the partnership at the time of dissolution, less any damages Appellees suffered on account of the wrongful dissolution. *Id.* The arbitrator further decreed that the purchase price for Appellant's partnership interest was to be computed according to either ¶ 12(d) of the partnership agreement, which provided the purchase price of the partners' share was to be its fair market value for the latest fiscal year preceding the sale as determined by general accounting principles,[6] or under Section 8360(b)(2) of the Uniform Partnership Act.[7] Findings of Arbitrator at ¶ 9. The arbitrator also directed Appellees to grant Appellant prompt access "to all the Partnership books, records and accounts and any other relevant information" which would establish its value. *Id.* at ¶ 11. Additionally, the arbitrator specified he retained jurisdiction "to resolve any controversy or claim regarding the purchase price and/or the value of the interest that [Appellant] is entitled to, or any further dispute

6. Partnership Agreement, *supra*, ¶ 12(d), (R.R. at 187a–188a).

7. Section 8360(b)(2) of the Uniform Partnership Act provides:

(2) The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership, and for that purpose may possess the partnership property, if they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully the value of his interest in the partnership at the dissolution, less any damages recoverable under paragraph (1)(ii) [entitling the partners who have not caused the wrongful dissolution to damages for breach of the agreement from the partner or partners responsible for the wrongful dissolution], and in like manner indemnify him against all present or future partnership liabilities.

15 Pa.C.S.A. § 8360(b)(2).

between the parties pertaining to the dissolution of [the partnership]." *Id.* at ¶ 14.

Thereafter, Appellant filed a motion for clarification arguing the arbitrator's finding that the partnership "was for a definite term and a specific purpose" was "contrary to the written Partnership Agreement and contrary to applicable precedent." Appellant's Motion to Clarify/Modify Ruling, 9/27/04, at ¶¶'s 3–5 (R.R. at 351a). Additionally, although Appellees granted Appellant access to some partnership records, a dispute arose regarding Appellant's request that Appellees grant her experts access to certain documents which Appellant claimed were pertinent to the determination of the value of the partnership—a claim which Appellees contested. Further, Appellant sought the release of a master's report regarding the value of the partnership prepared as part of the divorce case of Appellee, Mary Lou Molnar, and Appellees requested a copy of Appellant's expert report valuing the partnership. On November 2, 2004, the arbitrator denied Appellant's motion for clarification, directed the parties to provide the judge overseeing the divorce case a consent order to release the master's report, instructed Appellees' counsel to meet with her clients and submit a status report on the disclosure of documents, and required Appellant to submit a status report estimating the time necessary to review the documents and prepare an appraisal of the partnership value.

This order, however, did not resolve the continuing conflicts between Appellant and Appellees. On March 4, 2005, Appellant filed a motion with the arbitrator to compel the distribution of partnership profits for 2003 and 2004 on March 15, 2005, and for distribution of partnership profits from every preceding calendar year to occur annually thereafter on March 15th. Appellees filed a response on June 4, 2005, contending the motion should be denied since the valuation process ordered by the arbitrator was ongoing. The arbitrator did not rule on this motion.

Due to further inability of the parties to agree on the manner of production of documents, the time for such review to occur, and the appraisal of the value of the partnership, the

arbitrator ordered the parties to appear in his office on September 15, 2005 with a written proposal for implementing both his findings of September 17, 2004, and his letter of November 4, 2004. Arbitrator's Letter, 9/8/05 (R.R. at 397a). After the conference, the arbitrator issued a written determination that the partnership was to produce the requested partnership documents promptly, Appellant's expert was to review the accountant's report on those documents and forward a copy to Appellees' counsel, and a date was to be set for a mutual exchange of reports on the value of the partnership interest. Arbitrator's Letter, 9/16/05 (R.R. at 402a).

Appellant contended that she still did not receive the partnership records from Appellees which she sought, and, after a telephone conference among the parties and the arbitrator, the arbitrator issued an order on November 7, 2005 directing that Appellant prepare a request for production of documents itemizing the documents not produced and, also, requiring Appellees to file a formal response under oath, and either produce the documents or explain why such documents could not be produced. After Appellant had prepared her request and Appellees had filed their response, in late November 2005, Appellant filed a motion with the arbitrator to find Appellees in contempt, and for leave to enforce any contempt order in the Court of Common Pleas of Allegheny County.

The arbitrator convened a meeting of the parties on December 15, 2005,[8] after which he directed Appellant prepare a summary of the issues discussed regarding the production and preparation of the documents, and he required Appellant to send the summary to Appellees in order for them to respond and indicate their agreement or disagreement with the matters contained in the summary. The arbitrator did not rule on the contempt request. The summary was sent by Appellant on March 15, 2006, and the arbitrator directed Appellees to

8. Prior to the meeting, Appellant requested that it be transcribed; however, Appellant avers that the arbitrator did not allow transcription even though she had court reporters present. *Motion to Terminate Arbitration*, 10/28/98, at ¶¶'s 27–30 (R.R. at 77a). No transcript of this meeting appears in the record.

answer and send a copy to him by May 31, 2006. Letter of Arbitrator, 5/22/06 (R.R. at 426–27a).

Once the arbitrator received Appellees' response, he ordered them to resubmit it to him in a different format, which they did, along with signed authorizations permitting Appellant to examine certain bank and real estate records of the partnership. On July 17, 2006, the arbitrator directed Appellant to use the authorizations "in a timely fashion and make immediate arrangements to review and/or copy any of the documents requested produced and/or available in the Request for Production of Documents." Letter of Arbitrator, 7/17/06 (R.R. at 458a).[9]

Appellant next filed a motion in the Allegheny County Court of Common Pleas on November 10, 2006 to terminate the arbitration, contending, *inter alia*, that the records provided to her were incomplete,[10] that the arbitrator was "ineffective in achieving complete compliance with Judge Baldwin's order," and that continuation of the arbitration would be "futile." Motion to Terminate Arbitration, 11/10/06, at 11, 13–14, (R.R. at 81a, 83a–84a). The presiding motions judge, Judge Timothy O'Reilly, conducted oral argument on the motion on November 20, 2006, but held his final decision in abeyance as

9. Appellees contend that they never received notice that Appellant ever delivered the authorizations to the holders of the requested records. Appellees' Letter to Arbitrator, 11/14/06, at 2 (R.R. at 460a).

10. According to Appellant's motion, the records sought related to the propriety of the alleged transfer of partnership funds by Appellees to a corporation in which Appellant and Appellees are each 1/3 owners, and which is the subject of separate litigation. Motion to Terminate Arbitration, 11/10/06, at 5–7 (R.R. at 75a–77a). Appellees took the position that they fully complied with the arbitrator's order to disclose all documents which the arbitrator's order required to ascertain the value of the partnership, and that the remaining documents Appellant sought were not relevant or material to the valuation of the real estate properties which they contend comprised the majority of the partnership assets. *See, e.g.,* Claimants' Response to Motion for Contempt, 12/7/05 at 2, 5 (R.R. at 412a, 415a). Also, some of the documents may have been destroyed in the widespread flooding which occurred in the Pittsburgh region in 2004. Motion to Terminate Arbitration, 11/10/06, at 6 (R.R. at 76a). We are not concerned in this appeal with the merits of these respective contentions, as they are not relevant to the disposition of the issues which we granted allocatur to consider.

he, thereafter, attempted to settle the case by conducting mediation among the parties.

Also on November 20, 2006, the arbitrator issued an order scheduling a hearing for January 8, 2007 in order to finally determine the value of Appellant's purchase price for her partnership share in accordance with his prior findings of September 17, 2004. The arbitrator also required each party to submit to him a written summary of their respective factual and legal positions, a witness list, expert reports, and copies of exhibits. Order of Arbitrator, 11/20/06 (R.R. at 462a). The trial judge, however, stayed the arbitrator's scheduled hearing by order dated January 2, 2007, pending further order, so he could conduct more settlement negotiations. Trial Court Order, 1/2/07 (R.R. at 66a). Appellees filed a notice of appeal of this order with the Superior Court, but that appeal was quashed for failure to file a statement of matters complained of on appeal. The trial judge still considered the matter under advisement, and he later issued an order on June 26, 2007, which terminated the arbitration and directed the parties to proceed with actions in partition to divide real estate held by the partnership. Appellees appealed again to the Superior Court.

The trial judge, in his opinion prepared pursuant to Pa. R.A.P. 1925(a), acknowledged that arbitration is a favored means of dispute resolution. However, the trial judge expressed his view that he was "increasingly disenchanted with the quality of justice achieved before Arbitrators," and viewed the instant case as suffering from the infirmity of irregularity. Trial Court Opinion, 6/26/07, at 7. The trial judge characterized the arbitrator's findings made on September 17, 2004 as an "Award," which he regarded as "unjust, inequitable and unconscionable" because it rested on arguments and no sworn testimony was taken by the arbitrator, even though Appellant had requested it. *Id.* The trial judge also characterized as "mind boggling" the arbitrator's finding that Appellant's resort to the Uniform Partnership Act to dissolve the partnership was "wrongful" and a basis for the award of damages. The trial judge further observed that the arbitrator had not

appointed a receiver to wind up the partnership affairs, nor did he obtain production of the documents Appellant had requested. *Id.* at 8. Noting the continuing dispute between the parties over the production of records, the trial judge stated: "Courts are much better equipped than Arbitrators to decide and enforce discovery issues." *Id.* The trial judge concluded by declaring he was terminating the arbitration and directing the parties to proceed to "enforce the award as modified via Partition." *Id.* at 9. The trial judge also stated that he specifically found "that this issue of wrongful termination and damages [is] contrary to law and indeed an unconscionable finding." *Id.*

A panel of the Superior Court reversed the trial judge and reinstated the arbitration in a published opinion, authored by Judge Bender and joined by Judges Bowes and Tamilia. *Fastuca, supra.* In its opinion, the Superior Court first determined whether the trial court's order of June 26, 2007 terminating the arbitration was final and, hence, appealable under Pa.R.A.P. 341.[11] The Superior Court remarked that the question of whether an order which terminates an ongoing arbitration is appealable was a question of first impression in Pennsylvania. In addressing this question, the Superior Court considered "whether the practical ramification of the order will be to dispose of the case." *Fastuca,* 950 A.2d at 986 (quoting *Friia v. Friia,* 780 A.2d 664, 667 (Pa.Super.2001)). The Superior Court reasoned that, since the original complaint filed by Appellant had been dismissed by then-Judge Baldwin's order of February 4, 2004, which also directed the parties to arbitrate all issues raised in the complaint, "the arbitration process ... was the only avenue of relief remaining, upon termination of which both the parties and their claims were 'out of court.'" *Fastuca,* 950 A.2d at 987. Thus,

11. The relevant portions of Rule 341 provide as follows:

    **Rule 341. Final Orders; Generally**

      (a) **General rule.** Except as prescribed in subdivisions (d), and (e) of this rule, an appeal may be taken as of right from any final order of an administrative agency or lower court.

      (b) **Definition of final order.** A final order is any order that:

      (1) disposes of all claims and of all parties.

    Pa.R.A.P. 341(a), (b)(1).

the Superior Court concluded that these "practical ramifications" of the trial judge's order rendered it final. *Id.* Accordingly, the Superior Court held that "a trial court's order purporting to terminate arbitration when the arbitration proceeding is the only means then of record for resolution of the parties' dispute is a final order for purposes of appellate review." *Id.*

The Superior Court then proceeded to consider the merits of Appellees' substantive claims raised in their appeal. Appellees contended that the trial judge abused his discretion with the entry of his order of June 26, 2007 terminating the arbitration, since the order professed to alter the arbitrator's findings. They also claimed that the trial judge exceeded his lawful authority when he terminated the ongoing arbitration. The Superior Court observed that the proper resolution of both questions was intertwined and dependent on the scope of the authority of a trial court to intervene in an arbitration before an arbitrator enters what he or she designates as an award.

The Superior Court began its determination of the extent of a trial court's power to intervene in ongoing arbitration proceedings by discussing the various types of arbitration authorized by Pennsylvania law: statutory arbitration, common law arbitration, compulsory arbitration, and voluntary arbitration of pending civil matters or issues.[12] The Superior Court noted that the specific type of arbitration the parties to the instant appeal had participated in was common law arbitration and, therefore, governed by Section 7341 of our Commonwealth's Uniform Arbitration Act which provides:

> The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity

12. *See* 42 Pa.C.S.A. §§ 7301-7320, 7341, 7361, and 7362, respectively.

caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa.C.S.A. § 7341.

The Superior Court interpreted Section 7341 as granting a trial court only the limited authority to vacate or modify an award of an arbitrator, based on its observation that the statute makes "no mention of preliminary determinations of any sort." *Fastuca*, 950 A.2d at 988. The Superior Court viewed this omission from the statute as an intentional restriction of the trial court's power, not an accidental one. The Superior Court noted that, prior to the arbitrator's entry of an award, the trial court is statutorily empowered to merely issue orders which compel or stay an arbitration proceeding, as authorized by Sections 7304(a) and (b) of the Uniform Arbitration Act.[13] The Superior Court also held that the power to stay an arbitration under Section 7304(b) is further limited to only determining whether the parties agreed to arbitrate their dispute.

Addressing the facts of this case, the Superior Court disapproved of the trial judge's conclusion, without discussion, that the arbitrator's September 17, 2004 findings were an award subject to modification or vacation under Section 7341. The Superior Court noted that these findings did not resolve the

13. § 7304. **Court proceedings to compel or stay arbitration**

   (a) **Compelling arbitration.**—On application to a court to compel arbitration made by a party showing an agreement described in Section 7303 (relating to validity of agreement to arbitrate) and a showing that an opposing party refused to arbitrate, the court shall order the parties to proceed with arbitration. If the opposing party denies the existence of an agreement to arbitrate, the court shall proceed summarily to determine the issue so raised and shall order the parties to proceed with arbitration if it finds for the moving party. Otherwise, the application shall be denied.

   (b) **Stay of arbitration.**—On application of a party to a court to stay an arbitration proceeding threatened or commenced the court may stay an arbitration on a showing that there is no agreement to arbitrate. When in substantial and bona fide dispute, such an issue shall be forthwith and summarily tried and determined and a stay of the arbitration proceedings shall be ordered if the court finds for the moving party. If the court finds for the opposing party, the court shall order the parties to proceed with arbitration.

   42 Pa.C.S.A. § 7304(a), (b).

dispute between the parties, but, rather, were simply preliminary determinations by the arbitrator, as evidenced by the fact that the arbitrator expressly retained jurisdiction to address the value of Appellant's partnership share and any further disputes that pertained to the dissolving of the partnership. The Superior Court found that, "by determining facts and focusing on remaining legal issues, such as the continuity of the partnership and Fastuca's putative breach of the partnership agreement, the Findings frame the issues that remain subject to resolution at subsequent hearings." *Fastuca*, 950 A.2d at 989. The Superior Court also viewed the arbitrator's order for the parties to exchange all relevant information regarding the valuation of Appellant's partnership share as an additional indication that his findings were merely preliminary. Consequently, the Superior Court concluded that, since the findings did not constitute an award, the trial judge lacked express authority under Section 7341 to modify or vacate those findings, and he only had authority to issue a stay for the limited purpose of determining the arbitrability of the underlying claims. The Superior Court therefore deemed the trial judge's order terminating the arbitration to be a "nullity." *Fastuca*, 950 A.2d at 990.

The Superior Court further observed that any petition to vacate or modify an award must be filed within 30 days of the entry of the award as specified by Section 7342(b). Hence, the court reasoned that, even if it were to consider the arbitrator's findings to be equivalent to an award, and Appellant's motion to terminate to be comparable to a petition to modify or vacate, Appellant was still entitled to no relief since the motion to terminate was filed over two years after the arbitrator rendered his findings—well more than the thirty day period allowed by Section 7342. The Superior Court, therefore, reversed the order of the trial court and reinstated the arbitration proceedings so that the arbitration ordered by Judge Baldwin could be completed.

Thereafter, Appellant petitioned our Court for allowance of appeal, which we granted in order to consider two issues:

1.) Whether the arbitrator's findings of September 17, 2004 constituted a final award within the meaning of 42 Pa.C.S.A. § 7341?

2.) Whether a trial court has equitable powers to terminate a common law arbitration prior to the entry of a final award by the arbitrator?

*Fastuca v. L.W. Molnar & Assoc.,* 600 Pa. 636, 637, 969 A.2d 1181, 1182 (2009) (order).

■ We begin with the question of whether the arbitrator's "findings" of September 17, 2004 constituted a final award under Section 7341 of the Arbitration Act. In their briefs to our Court, Appellant and Appellees both agree with the Superior Court that the arbitrator's findings were not in the nature of an award because: the arbitrator indicated by the language used in his findings that he did not believe it to be his final award; he expressly maintained jurisdiction over future contemplated proceedings; he required status updates from the parties; and he did not, in his findings, resolve all of the disputed matters between the parties which were before him. Additionally, both parties agree that the plain language of Section 7341 does not permit judicial review of any ruling of the arbitrator other than a final award. After our own separate and careful review, we agree that the Superior Court was correct in its ruling that the arbitrator's findings did not constitute an award, as that term is used in Section 7341, and, hence, those findings were not subject to judicial review under that statute.

■ Because questions of statutory interpretation are questions of law, our standard of review of the Superior Court's interpretation of Section 7341 is *de novo,* and our scope of review is plenary. *Kopko v. Miller,* 586 Pa. 170, 177, 892 A.2d 766, 770 (2006). As our Court has previously noted, in interpreting provisions of the Uniform Arbitration Act, a reviewing court must, as in interpreting all statutes, ascertain and effectuate the intent of the General Assembly. *Goeller v. Liberty Mut. Ins. Co.,* 523 Pa. 541, 545, 568 A.2d 176, 177 (1990). It is axiomatic that the best indication of the intent of

the legislature is usually found in the plain language of a statute. *Martin v. Commonwealth, Dept. of Transp., Bureau of Driver Licensing,* 588 Pa. 429, 438, 905 A.2d 438, 443 (2006). Thus, we will interpret the words of the Uniform Arbitration Act in accord with the ordinary rules of grammar, as well as in a manner consistent with their common and approved usage. 1 Pa.C.S. § 1903; *Goeller, supra.*

Neither Section 7341, nor any other section of the Uniform Arbitration Act, explicitly defines a common law arbitration award; however, our Court has previously described an arbitration award as "the judgment of a tribunal selected by the parties to determine matters actually in variance between them." *Green & Coates Street Pass. Ry. Co., v. Moore,* 64 Pa. 79, 91 (Pa.1870); *Keiser v. Berks County,* 97 A. 1067, 253 Pa. 167, 168 (1916) (quoting *Green* ). Further, in *Great American Ins. Co. v. American Arb. Assoc.,* 436 Pa. 370, 260 A.2d 769 (1970) our Court established that the *sine qua non* of an award is its finality in disposing of all the matters submitted by the parties to the arbitrator for his or her decision. In *Great American,* an individual injured in an automobile accident pursued a claim against her brother's automobile insurance company for uninsured motorists' benefits, and the matter was referred, under the terms of the policy, to common law arbitration before an arbitrator from the American Arbitration Association. The arbitrator divided the proceedings into two parts: the first was to determine whether the injured individual was covered under the policy, and the second was to calculate her damages. After conducting the first hearing, the arbitrator ruled that coverage existed under the policy, and he scheduled a second hearing. Prior to the second hearing, the insurer filed a complaint in equity against the American Arbitration Association seeking to enjoin the second arbitration hearing on the basis that the arbitrator had committed an error of law in interpreting the insurance contract. The trial court refused to grant the injunction on the basis that there had been no misconduct by the arbitrator.

Our Court affirmed and agreed that there had been no misconduct by the arbitrator in rendering his decision which

would justify the granting of equitable relief. We also observed that allowing equitable intervention under such circumstances "would mean that arbitration proceedings, instead of being a quick and easy mode of obtaining justice, would be merely an unnecessary step in the course of litigation, causing delay and expense, but settling nothing finally." *Great American*, 436 Pa. at 373, 260 A.2d at 770. Our Court further remarked that a complaint in equity was not the proper manner for a party to obtain judicial review of an arbitrator's decision; rather, we reminded that a petition to vacate the arbitration award was the correct method to obtain such review. We noted that the decision of the arbitrator after the first hearing was not an award since it did not address the issue of damages, pointing out that it was quite possible that the arbitrator would award no damages at the second hearing, or that the arbitrator's final damage award would be satisfactory to the insurer. We therefore concluded that "the insurer was attempting to gain interlocutory review by the equity route rather than await a final award and then petition to vacate it," *id.* 436 Pa. 370, 260 A.2d at 771, and we indicated that dismissal of the equitable complaint by the trial court would have been proper on these grounds as well. Thus, applying this rationale to the case at bar, it is clear that since the arbitrator's findings of September 17, 2004 which did not resolve all outstanding issues arising from the dispute between Appellant and Appellees were, likewise, interlocutory, they did not constitute an award.

■ Various secondary legal authorities have also recognized a requirement that an arbitrator's decision must resolve all disputed matters presented to him or her in order for that decision to constitute an award. *See, e.g.*, 3 P.L.E. Arbitration § 12 (defining award as the final judgment or decision pronounced by the arbitrators in settlement of the controversy submitted to them); *Black's Law Dictionary* (8th. Edition) (defining award as "[a] final judgment or decision, esp. one by an arbitrator ... assessing damages.") Thus, in accord with our prior precedent, and the common and accepted meaning of the term award as it is generally used in the context of

arbitration proceedings, we hold that, for an arbitrator's decision to constitute an award within the meaning of Section 7341, it must be a ruling by the arbitrator which finally resolves all disputed matters submitted to him or her by the parties and must, therefore, include the arbitrator's decision on all outstanding legal issues, and all necessary factual determinations.

In the case *sub judice*, it is clear the arbitrator bifurcated the resolution process of the claims of Appellant and Appellees which they wished him to address into two phases. In the first phase, he determined all legal issues surrounding the dissolution of the partnership—i.e., the basis on which it transpired and the relative rights of the parties in its aftermath—and he set forth his decision on those issues in his findings of September 17, 2004. At that time, however, he clearly did not attempt to address the factual question of the proper valuation of Appellant's partnership share. Instead, he recognized the need for the parties to gather information and prepare valuation figures so that he could later issue a final ruling on the amount Appellees were required to pay Appellant for her share. Towards that end, he ordered the aforementioned exchange of documents and expert reports, and he expressly retained jurisdiction to resolve any other issues arising out of the dissolution of the partnership. Thus, the arbitrator clearly contemplated that there would be a second phase of the proceedings in which the value of Appellant's partnership share would be finally determined by him. Consequently, since the arbitrator's findings of September 17, 2004 were not a full and final determination of all matters submitted to him for his consideration, the Superior Court's conclusion that these findings did not constitute an award under Section 7341, and were therefore not subject to judicial review under that statutory provision, was well founded and correct.

We turn next to the question of whether a trial court, even though lacking express statutory authority under Section 7341 to terminate an ongoing common law arbitration proceeding before the arbitrator has entered an award, has inherent

equitable authority to do so. Appellant concedes that the plain language of Section 7341 "does not appear to permit the interlocutory review of an ongoing arbitration proceeding." Appellant's Brief at 17. Nevertheless, she avers the trial court was empowered to act under the principle that courts possess general powers to act equitably when there exists no adequate remedy at law.[14] Appellant claims the remedy provided by Section 7341 was both "inadequate" and "inaccessible," noting Appellees' failure to turn over the books and records of the partnership. Appellant's Brief at 19. Appellant contends the arbitration had gone on for over three years, and the arbitrator had not issued a final award, nor secured the production of the documents which she requested. She avers her costs of litigation continued to accumulate during this time period, while the value of the partnership fluctuated over the course of the same time—waxing and waning as the values of the real estate market changed. She claims these factors constituted a "continuing prejudice." *Id.* at 20. Additionally, she argues other actions involving disposition of real property owned by the partnership were languishing in the courts of common pleas because of the ongoing arbitration. Thus, Appellant reasons, the statutory remedy which required her to wait for final disposition was wholly inadequate.

As support for the proposition that a trial court has equitable power to act to protect a litigant from such alleged undue expense and delay, Appellant cites to our Court's decision in *Duquesne Light v. Upper St. Clair*, 377 Pa. 323, 105 A.2d 287 (1954). In that case, an electric utility company sought to build a power transmission line through a residential area of a first class township. The utility sought approval from the PUC to do so, pursuant to the state law governing the proper procedure utility companies were to follow to obtain easements. The township sought to block the construction of the utility line towers on the grounds that their presence would

14. Appellant does not contend that there is any specific provision of the Uniform Arbitration Act which expressly authorizes a trial court to equitably intervene in a common law arbitration proceeding under these circumstances, and our independent review discerns no statutory language which confers such a power on a trial court.

violate the township zoning code. The township additionally promised to impose daily fines on the utility's contractors, so long as they continued with the construction without a permit, and, also, threatened the possible arrest of anyone involved in the construction process.

The utility ceased construction, but it sought injunctive relief from the trial court to block the township from enforcing its ordinance, which the trial court granted. Our Court upheld the court's grant of injunctive relief on the grounds that the township code was preempted by the state public utility code and, thus, the township zoning ordinances were unenforceable against the utility company. We further noted that the utility was exposed to a potential fine of $3,000 per day if it chose to continue construction, and, while construction was halted, it was unable to meet the excess power demand of its customers and was consequently losing $150.00 to $300.00 per hour. Our Court held that these facts established that the utility had no adequate remedy at law since the administrative procedures afforded by the first class township code were time consuming and that the utility would be incurring these mounting daily losses "while waiting for [the township's] administrative machinery to grind out an appealable order, or for a test case on the criminal side to run its course." *Duquesne Light*, 377 Pa. at 341, 105 A.2d at 295. Because we considered this potential financial harm to Duquesne Light to be "irreparable" under the circumstances, we ruled that the trial court had equitable jurisdiction to provide the injunctive remedy which it did. *Id.*

Appellant herein contends that the delay and alleged ineffectiveness of the arbitration was likewise leading to harm to her financial interests and, had the trial court not exercised equitable jurisdiction, that harm would have been irreparable. She again avers her harm arose from an alleged deprivation of her property interests via increased litigation costs and fluctuation in market values of the property interests of the partnership due to the three year length of the arbitration. She claims that requiring her and other litigants in her position to remain in arbitration "in these circumstances without remedy

on the pretext that a court may not examine a matter absent an award would serve, if only by delay, to prejudice the litigants and deprive them of their property rights." Appellant's Brief at 23.

Appellant additionally asserts that the delay in the arbitration affected her fundamental right to due process. As an example, she cites *Everett v. Harron*, 380 Pa. 123, 110 A.2d 383 (1955), in which our Court held that it was proper for plaintiffs to use an action in equity to generally enjoin a public amusement facility from barring the admission of African Americans on the basis of race, even though such discriminatory conduct was prohibited by a criminal statute, which also allowed anyone who was the victim of such discrimination to bring a civil action against the offending party. Our Court observed that equity acts to protect specific interests, which may involve either property or personal rights, and the fact that impairment of those interests is punished by the criminal law does not deprive a court from exercising equity jurisdiction to also protect them.

Appellant also discusses our holding in *Mattos v. Thompson*, 491 Pa. 385, 421 A.2d 190 (1980), in which we ruled that the mandatory arbitration process created by the former Pennsylvania Health Care Services Malpractice Act ("Malpractice Act") for the adjudication of medical malpractice claims failed to achieve the legislature's objective of providing a speedy and effective means by which such claims could be resolved, and, thus, created "an oppressive burden upon the right to jury trial guaranteed by our state constitution." *Id.*, at 388, 421 A.2d at 191. Reviewing the considerable data prepared by the Commonwealth Court on the operation of the panels, our Court concluded that the panels did not provide an "efficacious alternative dispute-resolution procedure." *Id.* at 393, 421 A.2d at 194. Consequently, we found: "the delays involved in processing [malpractice] claims under the prescribed procedures set up under the [Malpractice] Act result in an oppressive delay and impermissibly infringes upon the constitutional right to a jury." *Id.* at 396, 421 A.2d at 196.

However, our Court also reaffirmed in this opinion that it continued to regard "arbitration as a viable, expeditious, alternative method of dispute resolution." *Id.* (quoting *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 120, 394 A.2d 932, 939–40 (1978)). We expressed our confidence that "as experience has demonstrated ... arbitration is still a viable alternative that can be effective in many areas." *Mattos,* 491 Pa. at 397, 421 A.2d at 196.

Appellant contends that *Everett* supports the proposition that a trial court may use its equitable authority to enjoin the violation of fundamental rights if legal or statutory remedies are inadequate, or when resort to such remedies would cause "inordinate delay." Appellant's Brief at 25. Appellant asserts that *Mattos* establishes "that oppressive delay may constitute a deprivation of a litigant's due process rights." Appellant's Brief at 25. She specifically avers that she endured just such an oppressive delay because of the length of the arbitration proceedings. She also claims that there were what she termed "glaring irregularities" in the conduct of the arbitration process relating to the disputed discovery issues, including: the alleged denial of an evidentiary hearing by the arbitrator, the refusal of the arbitrator to allow a stenographic record be made of certain proceedings or to present witnesses at them, and the arbitrator's issuing of findings based solely on argument by the attorney for Appellees and not the presentation of factual evidence. Appellant's Brief at 26.

Appellees counter Appellant's arguments by first reminding that our Court has twice held that an action in equity is not the acceptable method of terminating an ongoing common law arbitration proceeding, citing *Harleysville Mut. v. Adair,* 421 Pa. 141, 146, 218 A.2d 791, 794 (1966) (analyzed at length, *infra* ), and *Great American, supra.* Appellees argue that had the General Assembly wished to reserve to the courts the powers to intervene in arbitrations prior to the issuance of a final award they could have explicitly provided such a power when they enacted the Uniform Arbitration Act. Appellees call our attention to the fact that other states like Michigan have expressly provided courts with these types of equitable

powers in their arbitration acts.[15]  Appellees aver that the fact such a specific reservation to the trial court of such equitable authority has been omitted from Pennsylvania's Uniform Arbitration Act signifies the intent of our legislature to specifically prohibit trial court intervention prior to the entry of a final award.

Additionally, Appellees contend that Pennsylvania limits judicial review of common law arbitration proceedings, and "has a strong public policy favoring arbitration."  Appellees' Brief at 44.  Appellees point out that arbitration is favored because it promotes "swift and orderly disposition" of claims. *Id.* (quoting *McCarl's Inc. v. Beaver Falls Municipal Auth.,* 847 A.2d 180 (Pa.Cmwlth.2004)).  Appellees maintain that, if a disappointed party to an arbitration is able to secure judicial intervention prior to a final award, then this would negate arbitration's beneficial advantages, since a party could bring a trial court into the proceedings any time he or she "lost" any part of the arbitration proceedings.  Appellees' Brief at 45. This court intervention, Appellees argue, would expend the court's limited resources and stall the final resolution of the disputed matters.

Appellees assert this is precisely what transpired in the instant case, averring that Appellant was "displeased and disappointed" with the arbitrator's rulings on the liability issues and that her actions in seeking the stay from the trial court delayed the final remedy hearing.  Appellees' Brief at 45.  Appellees proffer that had the trial court not terminated the arbitration and the final hearing been held as scheduled, a final award could have been issued several years ago, and, as the Superior Court found, the award would have been reviewable under Section 7341.

Appellees discredit Appellant's reliance on Pennsylvania cases which they contend involve "matters fundamentally dif-

15.  *See, e.g.,* Mich. Comp. Laws Ann. § 600.5035 (providing that arbitration act shall not be construed "to impair, diminish, or in any manner to affect the equitable power and authority of any court over arbitrators, awards, or the parties thereto; nor to impair or affect any action upon any award, or upon any bond or other engagement to abide an award.").

ferent from common law arbitration." Appellees' Brief at 47. They note, for instance, that *Duquesne Light* involved a dispute which arose under the zoning codes of a local municipality, and *Mattos* was concerned with a compulsory arbitration process required by statute. Appellees point out that since these cases involved mandatory, statutorily prescribed methods of dispute resolution they, consequently, have no bearing on common law arbitration proceedings which are voluntary and governed by the contractual terms set forth by the parties. Consequently, Appellees aver that there is no coherent rule justifying equitable intervention which can be discerned from those cases which are applicable to common law arbitration. Appellees, therefore, urge our Court not to fashion a rule circumventing the clear statutory limitations on court interference with common law arbitrations.

Appellees contend that none of the equitable standards which Appellant advances as a proposed standard for judicial intervention in cases such as this one—i.e. inadequate statutory remedies, prevention of irreparable harm, protection of property, or avoidance of deprivation of fundamental rights or multiplicity of suits—were applicable to the instant matter. Appellees argue this matter was not going to go on indefinitely as Appellant suggests since, at the time the trial court intervened, the arbitrator had scheduled a hearing to make a final ruling on the value of the partnership share. Appellees note, in response to Appellant's contentions about her alleged costs of litigation and diminution in property values of the partnership, that this hearing was scheduled mere days before the trial court intervened and, at that hearing, she was going to be able to present expert evidence on the value of the real estate held by the partnership and any other evidence she wished concerning proper valuation of her partnership share. Appellees additionally point out that, after the hearing was concluded, the arbitrator would have issued his final award, and Appellant could have sought court review of it under Section 7341 of the Uniform Arbitration Act. Appellees assert that we should not attempt to fashion a judicial remedy to address egregious conduct or hypothetical facts which are not

present in this case, and they additionally argue that Sections 7341 and 7342 of the Uniform Arbitration Act already provide adequate means of judicial review for such situations if they are presented by future cases.

■■ In resolving the parties' competing claims, we are guided by the following principles. As our Court has observed on repeated occasions, the settlement of disputes by arbitration is favored by the public policy of this Commonwealth and is, therefore, encouraged by our courts and by statute. *Borgia v. Prudential Ins. Co.*, 561 Pa. 434, 447, 750 A.2d 843, 850 (2000); *Flightways Corp. v. Keystone Helicopter Corp.*, 459 Pa. 660, 662–63, 331 A.2d 184, 185 (1975). As discussed above, when the parties in this matter entered into their partnership agreement, they agreed that **any** controversy or claim relating to the agreement or an alleged breach thereof would be settled by the arbitration process under the rules of the American Arbitration Association ("AAA"). *See* Partnership Agreement at ¶ 14. Since the parties' agreement expressly provided that the AAA rules were to govern their arbitration proceedings, and no mention or reference was made to the provisions of Pennsylvania's Uniform Arbitration Act governing statutory arbitration, the Superior Court was correct in concluding the parties intended all disputes arising out of the agreement to be settled through common law arbitration. *See Borgia*, 561 Pa. at 439, 750 A.2d at 846; *Runewicz v. Keystone Ins. Co.*, 476 Pa. 456, 460, 383 A.2d 189, 191 (1978).

■ When parties of equal bargaining power consent in an agreement to settle all future disputes as to its interpretation by utilizing common law arbitration, they are bound by that provision, and the function of the courts is limited to enforcing this contractual provision according to its terms as established by the parties. *Borough of Ambridge v. Columbia*, 458 Pa. 546, 328 A.2d 498 (1974). As former Justice Musmanno aptly noted in regard to the limited ability of parties to subsequently change the agreed upon terms and conditions under which such an arbitration is to be conducted: "[t]he person who

offers carte blanche to another to enter the temple of arbitration may not later on impose restrictions as to the type of clothing the other person shall wear when he presents himself at the doors of the temple." *Wyoming Radio v. National Association of Broadcast Employees and Technicians,* 398 Pa. 183, 187, 157 A.2d 366, 367 (1960).

Nevertheless, in spite of this deference to the parties' choice of common law arbitration as their favored means of dispute resolution, the question of whether a trial judge has equitable jurisdiction to terminate an ongoing arbitration for the reasons cited by Appellant is governed by the well established precept that courts will have "[equitable] jurisdiction and in furtherance of justice will afford relief if the statutory or legal remedy is not adequate, or if equitable relief is necessary to prevent irreparable harm." *Pennsylvania State Chamber of Commerce v. Torquato,* 386 Pa. 306, 328, 125 A.2d 755, 766 (1956) (emphasis omitted). However, we are also bound by the corollary principle that if a sufficient legal remedy exists "a court is divested of equity jurisdiction." *Pentlong v. GLS Capital,* 573 Pa. 34, 43, 820 A.2d 1240, 1245 (2003). Consequently, "in order to determine whether equity jurisdiction is proper in the face of an existing legal or statutory remedy, we must determine if the legal remedy available . . . is adequate and complete." *Id.* We note in this respect that "the fact that a court of equity may be capable of achieving an expeditious resolution of a dispute does not warrant its intrusion where there is a statutory process designed for its resolution." *Mercy Hosp. of Pittsburgh v. Pennsylvania Human Relations Comm.,* 499 Pa. 132, 136, 451 A.2d 1357, 1359 (1982).

Although Appellant has couched her arguments in terms of an asserted denial of her right to due process of law and impingement of her fundamental individual property rights, her arguments, distilled to their essence, are, in actuality, complaints over the rulings of the arbitrator regarding Appellees' alleged failure to provide the documents she de-

sired to obtain, and the supposed excessive delay in the arbitrator's rendering of a final ruling.

Regarding the discovery issue, as Appellees have pointed out, in *Harleysville, supra* our Court specifically rejected the use of an action in equity by a party who is dissatisfied with an arbitrator's handling of a discovery issue as a means of blocking a common law arbitration from continuing and obtaining judicial review of that issue before the entry of a final award. In *Harleysville,* a driver of a motor vehicle was injured in an accident and sought recovery under the uninsured motorist coverage contained in his own policy. The insurer disputed the claim, and the matter proceeded to common law arbitration in accordance with the terms of the policy. After an arbitrator was selected, the insurer demanded the injured driver answer 83 interrogatories. The driver refused, and the matter was submitted to the arbitrator for resolution. The arbitrator ruled that the driver did not have to answer the interrogatories and scheduled a hearing on the underlying coverage dispute. Shortly before the hearing, the insurer filed a complaint in equity seeking an injunction to prevent the hearing from going forth. The trial court denied the request, and our Court affirmed.

In our opinion, we noted the question of whether the insurer was entitled to the discovery it requested was "purely one of procedure." *Harleysville,* 421 Pa. at 144, 218 A.2d at 793. As a procedural question, our Court deemed the matter controlled by the AAA rules which the parties voluntarily agreed would govern the arbitration. We noted that, by making this agreement, the parties "voluntarily surrendered the right to invoke any of the procedural devices which would be available in an action at law." *Id.* at 145, 218 A.2d at 794. We further opined, "[t]he right to discovery is one of these devices which is not obligatory as an essential of due process to a valid arbitration proceeding." *Id.* We therefore reasoned that, if we were to allow parties, who have, of their own free will, agreed to enter the arbitration process and to be bound by AAA rules in the conduct of that process, to later avail themselves of the full panoply of civil procedural devices

available in conventional civil actions, and thereby disregard the terms of their contract and the AAA rules, this "would eliminate, or at least severely curtail, arbitration as a means of facilitating the solution of disputes." *Id.*

We further expressly disapproved of using actions in equity as a means of interfering with an arbitration process once it had begun. We decreed that the use of such suits by a party to end an ongoing arbitration because of the party's unhappiness with an arbitrator's discovery ruling was improper:

> To permit an equity action to be brought to restrain an arbitration proceeding *in toto* or to obtain declaratory judgments as to procedural matters because of dissatisfaction with an interlocutory ruling of the arbitrator would be unthinkable. No such injunctive or declaratory judgment process is available in an ordinary civil action at law as a means of challenging an interlocutory ruling by the court.

> \*　　\*　　\*

> After the commencement of the arbitration the arbitration procedures agreed to by appellant controlled. To permit appellant to maintain this proceeding in equity would permit it to gain by indirection what it is not entitled to by direct action.

*Id.* at 145–146, 218 A.2d at 794.

In addition, our Court held that provisions of our Commonwealth's Arbitration Act of 1927 [16] provided the insurer with "a complete method of statutory relief" since it permitted an appeal to a court which was empowered under this act to "vacate, modify, or correct an award where the arbitrators exceed their powers or refuse to hear evidence or by misbehavior prejudice the rights of a party." *Id.* at 146, 218 A.2d at 794. As a result of the availability of this remedy we deemed the use of equitable proceedings to be "improper and unjustified." *Id.*

16. Arbitration Act of April 25, 1927, April 25, P.L. 381, No. 248, §§ 7, 10, codified at 5 P.S. §§ 167, 170, repealed by the Uniform Arbitration Act.

Likewise, Appellant in the present matter voluntarily contracted to have any controversies or claims which arose under an agreement submitted to arbitration, and, also, expressly agreed that any such arbitration would be conducted in accordance with AAA rules which specifically authorized the arbitrator "to resolve any disputes concerning the exchange of information." *See American Arb. Assn. Commercial Arb. Rules and Mediation Procedures,* Amended and Effective July 1, 2003, Rule 21(c), (R.R. at 490a). Consequently, when the arbitrator implemented his various conciliatory measures to settle the conflict between Appellant and Appellees over what documents Appellant would be entitled to review prior to the final hearing, Appellant received precisely what she had bargained for, namely, the services of a neutral arbitrator who would resolve the dispute. Merely because she was dissatisfied with the particular remedies the arbitrator attempted to implement, Appellant was not entitled to immediate equitable intervention by the court of common pleas to restrain the arbitration process before its completion. Moreover, like the disgruntled insurer in *Harleysville,* she, too, had other legal avenues by which she could have sought relief for her complaints concerning the alleged lack of access to documents and purported procedural flaws in the arbitration process.

As the Superior Court and Appellees have noted, the trial judge's intervention, though obviously well-intentioned, actually deprived Appellant of the ability to expeditiously utilize those legal remedies which were available to her. The trial judge's order terminating the arbitration prevented the arbitrator from holding a final hearing, during which time Appellant could directly have raised to the arbitrator the complaints she now raises regarding the manner in which the arbitration process was conducted, and she could have requested that the arbitrator consider them as factors in his ultimate valuation decision. Moreover, and most importantly, had the arbitration process not been circumvented by the trial court's response to Appellant's motion to terminate the arbitration, once the arbitrator entered his final award, if dissatisfied, Appellant could have then properly sought judicial review under Section

7341 and requested vacation or modification of the award based on the alleged "glaring irregularities" she claims occurred in the conduct of the arbitration. Appellant's Brief at 26. Consequently, Appellant suffered no denial of her due process rights which warranted the trial court's exercise of equitable jurisdiction, as, had she simply allowed the arbitrator's entry of a final award, Section 7341 would have provided her a "complete method of statutory relief." *Harleysville, supra.*

■ With respect to Appellant's complaint of excessive delay in the arbitrator's making of an award, we conclude a trial court does not have equitable jurisdiction to terminate an arbitration because of such delay, since a legislatively prescribed and wholly adequate remedy exists which governs such a circumstance. An arbitrator does not have unchecked power to continue proceedings indefinitely before rendering a decision. If an arbitrator fails to act, a court is specifically empowered to remove the arbitrator and replace him or her. *See* 42 Pa.C.S.A. § 7305 ("[W]hen an arbitrator appointed fails to act or is unable to act and his successor has not been appointed, the court on application of a party shall appoint one or more arbitrators.") [17]

In the case at bar, we see nothing of record to suggest that the arbitrator was acting in a dilatory manner such that his removal under this section would have been warranted at the time the trial court terminated the arbitration. To the contrary, our review of the record, as discussed above, suggests that the arbitrator acted in a prompt, diligent manner to resolve the myriad difficulties that arose between the parties regarding the review of the relevant partnership records. The arbitrator conducted many proceedings after his findings of September 17, 2004 in order to settle the issues that arose over the scope and manner by which review of those records was to be conducted. His attentiveness to the parties' concerns was evidenced by his prompt scheduling of conferences and hearings to address additional issues presented to him by

17. Under 42 Pa.C.S.A. § 7342, certain provisions of the Uniform Arbitration Act governing statutory arbitration, including 42 Pa.C.S.A. § 7305, are applicable to common law arbitration.

the parties as they arose, as well as his diligent efforts to fashion a workable, mutually acceptable solution to the document disclosure dispute between the parties.

Further, although there was no explicit time limit in the partnership agreement under which this arbitration was to be completed, because, as discussed above, the agreement specified that the arbitration was to be conducted in accord with the AAA Rules, a time limit existed under which the arbitrator had to render his final decision. *See, American Arb. Assn. Commercial Arb. Rules and Mediation Procedures, supra,* Rule 41, (R.R. at 494a) ("The award shall be made promptly by the arbitrator and, unless otherwise agreed by the parties or specified by law, no later than 30 days from the date of closing the hearing, or, if oral hearings have been waived, from the date of the AAA's transmittal of the final statements and proofs to the arbitrator.") Consequently, because the arbitrator had scheduled the final hearing to determine the value of Appellant's partnership share for January 8, 2007, a conclusive end to the arbitration proceedings was in sight for Appellant, since the arbitrator's decision had to be rendered within 30 days after that hearing. If the arbitrator failed to render a decision within a reasonable period after that 30 day period elapsed, then Appellant could have gone to the trial court seeking relief under Section 7305. However, such relief, as provided by the plain language of that statutory provision, is limited to replacement of the arbitrator, not termination of the entire arbitration proceeding, as the trial court in the present matter did.

The cases which Appellant has cited in support of a finding of equitable jurisdiction, *Duquesne Light, Everett,* and *Mattos,* do not compel a different result.[18] The plaintiffs in those cases had limited legal recourse available to them to avoid

18. Appellant also cites three cases from other jurisdictions which she claims illustrate the inherent power of a court to "interject into a pending arbitration and even terminate it where the interests of justice require." Appellant's Brief at 28. Since these decisions are from other jurisdictions, they are, of course, not binding on us in our interpretation of Pennsylvania law.

irreparable harm to their pecuniary interests or personal rights. They were required to either submit their dispute to entities which they had no choice in selecting and no way to reasonably estimate or affect the timing of those entities' ultimate decisions, or, alternatively, forced to enmesh themselves in the machinery of the criminal justice process. These plaintiffs, therefore, had no satisfactory legal method by which to expeditiously advance their respective claims, nor could they reasonably estimate how long it would take for them to obtain a final determinative ruling.

By contrast, Appellant herein chose to have an arbitrator resolve all of her claims under the partnership agreement

In *Belanger v. State Farm*, 74 A.D.2d 938, 426 N.Y.S.2d 140 (N.Y.A.D. 1980), the New York intermediate court of appeals concluded a trial court had equitable authority to remove an arbitrator who was not acting impartially, and, also, to impose conditions on the arbitration to ensure no party would gain undue advantage. There is no alleged partiality by the arbitrator in the present matter.

In *J.Brooks Securities v. Vanderbilt Securities,* 126 Misc.2d 875, 484 N.Y.S.2d 472 (N.Y.Sup.1985), a New York trial court entered an injunction before an arbitration commenced in order to prevent one of the parties from disseminating wrongful information and attempting to take clients from the other party until an arbitration panel could be assembled and, under the terms of the arbitration agreement, render a decision on whether the injunction should continue to stop these practices. The trial court therefore acted to preserve the *status quo* between the parties so that the efficacy of the arbitration process would not be irrevocably harmed by the actions of one of the parties. The trial court in the instant case, by contrast, did not act to facilitate the conduct of the arbitration; rather, it fatally impeded the ongoing arbitration process by terminating it.

In *Manatt, Phelps, Rothenberg & Tunney v. Lawrence,* 151 Cal.App.3d 1165, 199 Cal.Rptr. 246 (Cal.App.2d.Dist.1984), the intermediate court of appeals of California concluded that a trial court had authority under the California Business and Professions Code to terminate arbitration proceedings after they had begun if, at any time, it found the matter was "not amenable to arbitration." *Id.* at 1173. *Manatt* is therefore unhelpful to Appellant as Pennsylvania's Uniform Arbitration Act does not confer upon a Pennsylvania trial judge the same plenary power. Further, Judge Baldwin's ruling of February 4, 2004 had already determined that all of Appellant's claims regarding her withdrawal from the partnership were subject to the parties' agreement to arbitrate. No other trial judge could alter this ruling under the law of the case doctrine. *See, e.g., In re De Facto Condemnation and Taking of Lands of WBF Associates, L.P. ex rel. Lehigh–Northampton Airport Authority* 588 Pa. 242, 268, 903 A.2d 1192, 1207 (2006) ("judges of coordinate

pursuant to AAA rules, and, thus, she was assured that she could avail herself of the procedural protections provided by those rules, including the requirement that the arbitrator's final decision be made within 30 days of the holding of a final hearing. Consequently, Appellant had amply sufficient legal recourse to protect her financial interests, and a time period in which she could be certain of receiving a final resolution of all her claims, unlike the plaintiffs in *Duquesne Light, Everett,* and *Mattos.*

The fact that Appellant can cite to no statutory authority or Pennsylvania caselaw which recognizes an equitable power of a trial court to terminate a common law arbitration proceeding before the arbitrator has rendered an award is unsurprising, given the public policy of our Commonwealth which generally favors voluntary arbitration as a means of speedy and effective alternative dispute resolution that parties may choose to settle their disputes. Permitting micromanagement by a court of ongoing common law arbitrations in situations such as that which transpired in the present case would defeat the contractual intent of the parties who bargained for their disputes to be resolved with minimal court intrusion. If we were to allow the type of pre-award equitable court intervention which Appellant presently seeks, it would result in the omnipresent prospect of a trial court being dragged into the minutiae of the arbitral process by any party who wants immediate judicial review of every unfavorable discovery ruling by the arbitrator, or who desires to escape from the arbitration process altogether through its termination, if he or she perceives it to be unfolding in an unfavorable manner. This would severely undermine the legislature's intent, as reflected by its enactment of the Uniform Arbitration Act, to restrict the degree of permissible judicial intrusion into common law arbitrations once they have commenced.

Moreover, as discussed above, recognition of any such inherent equitable judicial authority is wholly unnecessary under the circumstances of this case, as the legislature has already

jurisdiction sitting in the same case should not overrule each other's decisions on the same issue").

afforded specified statutory remedies of which Appellant could have availed herself to address the alleged procedural shortcomings in the arbitration process. In accord with these considerations, we have, in *Great American* and *Harleysville,* discussed *supra,* disapproved of the use of equitable proceedings to obtain interlocutory review of discovery matters, or to deprive an arbitrator of the ability to render a final decision on matters submitted to him by the parties in accordance with their agreement to arbitrate, and we reaffirm those holdings today.

The proper role of the trial court in this matter was to effectuate the parties' intent to have an arbitrator resolve any and all disputed issues which could arise out of the performance of the partnership agreement, including issues arising from Appellant's withdrawal from the partnership. Judge Baldwin's order of February 4, 2004, referring the matters in contention to common law arbitration, was consistent with the parties' intent. The trial judge's order of June 26, 2007, purporting to terminate the arbitration, was not. As the Superior Court properly concluded, such an order was not authorized by law, nor, for the reasons which we have outlined above, did the trial judge have inherent equitable authority to enter such an order. The Superior Court's May 9, 2008 order reversing the trial court's order of June 26, 2007, and reinstating the arbitration proceeding, is therefore affirmed.

Order affirmed. Jurisdiction relinquished.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE and Justices EAKIN, BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

I join the majority opinion, subject to some modest differences of degree.

As this case reflects, the expediency, inexpensiveness, and certainty of arbitration sometimes may be seen as more of an ideal than a practical reality. I continue to support arbitration nonetheless, in light of the comparative advantages it offers, which I believe are realized in many situations. Moreover, I agree with the majority that, if greater net benefits are to be achieved, judicial intervention must be restrained, consistent with the legislative direction. Finally, with no disrespect intended to the arbitrator—who very well may have performed admirably—I see it as beyond the scope of our review to comment on his handling of the discovery disputes. From my perspective, it is more than enough to say that, on this record, the common pleas court erred both in intervening and in the form of intervention chosen.