**MUNICIPAL EMPLOYEES ORGANIZATION OF PENN HILLS**

v.

**MUNICIPALITY OF PENN HILLS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 24, 2014.

Decided May 27, 2014.

Paul N. Lalley, Pittsburgh, for appellant.

David J. Mongillo, Pittsburgh, for appellee.

BEFORE: PELLEGRINI, President Judge, and McGINLEY, Judge and McCULLOUGH, Judge.

OPINION BY Judge McCULLOUGH.

The Municipality of Penn Hills (Municipality) appeals from the May 30, 2013 order of the Court of Common Pleas of Allegheny County (trial court), which directed a grievance originally filed by the Municipal Employees Organization of Penn Hills (Union) on August 13, 2009, be submitted to a new arbitrator to hear and evaluate the case and render a decision on the merits. We affirm the trial court's order with a modification addressed below.

The underlying facts of this case are not in dispute. The Municipality and the Union are parties to a collective bargaining agreement (CBA). Article 19, Section 8 of the CBA includes a residency requirement, providing as follows:

All employees must live in the Municipality. In the event an employee is hired who lives outside the Municipality, he/she must, within one (1) year, move into the Municipality. Failure to comply

with this Section can result in an employee being discharged.

(Reproduced Record (R.R.) at 63a.) On August 5, 2009, Mohammed Rayan, the manager for the Municipality, sent identical letters to Mary Lou Flinn and Joseph Probo, code enforcement officers for the Municipality, requesting that they provide proof of their residency in the Municipality within ten days of the date of the letters. These letters noted that such proof could include a utility bill, property tax bill, or property deed. The letters further stated that if Flinn and Probo did not reside in the Municipality, they would have one year, until August 5, 2010, in which to establish such residency. The letters provided that if they did not provide the requested proof or change their residency by August 5, 2010, their employment with the Municipality would be terminated.

On August 13, 2009, the Union filed a grievance on behalf of Flinn and Probo asserting that: (1) the August 5, 2009 letters violated the "just cause" provision of the CBA by demanding that Flinn and Probo produce certain types of proof of residency when the specific types of proof necessary to satisfy the residency requirement had never been negotiated and the residency requirement had never been enforced previously; (2) the Municipality waived its right to enforce its residency requirement by not previously enforcing it; (3) the Municipality violated the anti-discrimination provision of the CBA by enforcing the residency requirement against union employees but not similarly enforcing it against non-union employees; and (4) the residency requirement was not uniformly enforced because some union members were not required to provide proof of residency.

The Union's grievance proceeded to a hearing before an Arbitrator on May 21, 2010. Before the Arbitrator, the Union argued that Flinn and Probo had provided adequate proof to satisfy the CBA's residency requirement, i.e., proof that they "live" in the Municipality. Additionally, the Union argued that the types of proof requested in Rayan's letters were not exclusive indicators of whether an employee "lived" in the Municipality. The Union characterized the requirement that Flinn and Probo produce a utility bill, property tax bill, or property deed as "inherently flawed, arbitrary and capricious." (R.R. at 85a.) In this regard, the Union asserted that ownership of property is not the equivalent of residency and that the Municipality "has required of the grievants something with which they cannot comply." (R.R. at 89a.) In response, the Municipality contended that Flinn and Probo have not provided adequate proof establishing that they "live" in the Municipality. The Municipality also cited Ordinance No. 1745 of 1982, which requires bargaining unit employees to adhere to the residency provisions of their respective labor agreements and identifies the failure to adhere as grounds for discipline or termination. (R.R. at 180a–90a.)

Rayan testified that he became the Municipality's manager in July 2009 and immediately sent out letters requesting that all employees provide proof of residency by submitting copies of their driver licenses. Rayan stated that he attempted to verify compliance with the residency requirement through the Allegheny County real estate website, after which he sent the letters to Flinn and Probo. Rayan acknowledged that, even though the residency requirement had been in place for nearly thirty years, it had not always been strictly enforced.[1] (R.R. at 78a–79a.)

_____

1. However, Rayan noted that the previous    manager had been removed from the position

Flinn testified that she has worked for the Municipality for thirty-four years in various positions and has been with the Code Enforcement Division since 1993. Flinn stated that she has always lived in the Municipality, first with her husband on Poketa Drive in Penn Hills and, after her husband passed away, at 121 Opal Road in Verona. The parties stipulated that, although Flinn's mailing address indicates that Opal Road is in Verona, it is actually a Penn Hills address. Flinn also testified that she has always voted in Penn Hills, her voter registration reflects her address as 121 Opal Road, her driver's license, automobile registration, and W–2 reflect the same address, and she pays taxes to Penn Hills. She provided this information to Rayan. (R.R. at 79a–80a.)

Regarding her living arrangements, Flinn testified that she rents a room from a longtime family friend, but she does not have a lease. Flinn stated that she cannot provide any of the documentation requested by Rayan because she does not own property in Penn Hills and does not pay her own utilities. Flinn noted that she spends many nights in Monroeville at her daughter's residence because her daughter has two children who are severely disabled and require a great deal of assistance. (R.R. at 80a–81a.)

Probo testified he has worked for the Municipality since 1993 and has been with the Code Enforcement Division since 1998. Probo stated that he did not live in the Municipality when he was first hired but that he moved to Penn Hills shortly thereafter. Probo noted that he currently rents a room in a single-family dwelling located at 160 Claymont Drive that is owned by a friend's mother in exchange for $100.00 a month and help with chores, but he does not have a lease. The parties stipulated that, although Probo's mailing address reflects that Claymont Drive is in Verona, it is actually a Penn Hills address. Probo also testified that he cannot provide any of the documentation requested by Rayan because he does not own property in Penn Hills and does not pay his own utilities. Probo provided Rayan with copies of his voter registration card and driver's license reflecting the above address, as well as pay stubs indicating that taxes are paid to the Municipality. (R.R. at 81a–82a.) On cross-examination, Probo acknowledged that his wife and son reside at 2033 Haymaker Road in Monroeville and that he does not always sleep at 160 Claymont Drive. Probo explained that he and his wife were married in August 2008 and that the home in Monroeville is in his wife's name. (R.R. at 82a–83a.)

Cathy Zegarelli, Union president, testified that she has been active in every negotiating session with the Municipality for the past fifteen years. Zegarelli stated that the Union had asked the Municipality to either remove or enforce the residency requirement during the latest talks. Zegarelli noted that the Municipality was not interested in changing the requirement. (R.R. at 83a.)

By decision and award dated August 9, 2010, the Arbitrator essentially denied the Union's grievance. The Arbitrator concluded that the Municipality had not waived its right to enforce its residency requirement. Additionally, the Arbitrator specifically rejected the Union's allegations that the Municipality discriminated against Flinn and Probo because of their activities with the Union; the Municipality violated the CBA by enforcing the residency requirements against union members differently than against non-union employees; and the Municipality violated the "just cause" provisions of the CBA when it sent

because he failed to comply with the residency requirement.

out letters requesting certain proof of residency or be subjected to the possibility of discharge. However, the Arbitrator provided Flinn and Probo with an additional 90 days from the date of the award to work toward compliance with the residency requirements applicable to non-property owners, noting that the Municipality needs to establish additional criteria for providing proof of residence.[2] The Arbitrator did not expressly relinquish or retain jurisdiction for any purpose and did not require the parties to submit additional information with respect to enforcement of her award. (R.R. at 74a–106a.)

The Union thereafter filed an appeal with the trial court alleging that the award did not "draw its essence from the [CBA]" and was "genuinely without foundation in the [CBA]." (R.R. at 7a.) The Union invoked the trial court's jurisdiction pursuant to section 7313 of the Uniform Arbitration Act (UAA), which provides that:

> On application of a party, the court shall confirm an award, unless within the time limits imposed by this subchapter, grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in section 7314 (relating to vacating award by court) or section 7315 (relating to modification or correction of award by court).

42 Pa.C.S. § 7313.

Following a status conference with the parties on March 2, 2011, the trial court issued an order terminating the Union's appeal as "premature" and returning the matter to the Arbitrator "for further proceedings in accordance with her Award." (R.R. at 472a.) The Municipality appealed the trial court's March 2, 2011 order to this Court. On April 18, 2011, the trial court issued an opinion in support of its order describing the same as interlocutory and not subject to appeal. The trial court explained that the matter was remanded to the Arbitrator for further proceedings and that, should either party be aggrieved by these further proceedings, they could file an appeal at that time. (R.R. at 480a.)

In a memorandum decision dated December 22, 2011, this Court quashed the Municipality's appeal on the grounds that the trial court's order was not a final, appealable order. *Municipal Employees Organization of Penn Hills v. Municipality of Penn Hills*, 2011 WL 7047063 (Pa. Cmwlth., No. 538 C.D.2011, filed December 22, 2011). We noted in this opinion that the Arbitrator still needs to determine whether Flinn and Probo complied with the current residency requirements after the expiration of the additional time that was granted or whether Flinn and Probo complied with the new criteria for non-property owners that were to be developed by Rayan.

Subsequently, by letter dated January 26, 2012, the Arbitrator advised counsel for the Municipality and the Union as follows:

> Please be advised that it is my opinion that when I rendered my arbitration decision I intended it to be my final participation in that process. If I had intended to retain jurisdiction until the parties completed the process, I would have stated so in my decision. I hope this resolves your concerns. Thank you.

(R.R. at 543a.) The trial court thereafter convened additional status conferences on June 6, 2012, and January 22, 2013. Following the last conference, the trial court issued an order establishing a briefing schedule and oral argument. The trial

---

**2.** The Arbitrator cited Rayan's testimony that the enforcement of the residency requirement was part of an ongoing process and that he planned to address those situations where the rigid criteria in the notice could not be complied with. (R.R. at 103a.)

court heard oral argument in chambers on April 30, 2013. On May 30, 2013, the trial court issued its order directing that the Union's original grievance be submitted to a new arbitrator "to hear and evaluate the case and to render a decision on the merits of the matter," (R.R. at 586a), and the Municipality appealed to this Court.[3]

In a subsequent opinion in support of its order, the trial court explained its belief that the Arbitrator "still needed to determine whether [Flinn and Probo] complied with the current residency requirements after the expiration of the additional time that was granted, and to determine whether the Employees complied with the new criteria for non-property owners that were being developed by the Municipality's Manager." (Trial court op. at 3–4.) The trial court described the Arbitrator's refusal to proceed as an "unusual circumstance that is novel to this Court," stated that it "was not left with much of a choice," and "determined that the most fair and equitable path was to have the case submitted to a new Arbitrator...." (Trial court op. at 4.)

On appeal,[4] the Municipality first argues that the trial court's May 30, 2013 order constitutes an appealable collateral order under Pa.R.A.P. 313. We agree.

Pa.R.A.P. 313(a) states that "[a]n appeal may be taken as of right from a collateral order of an administrative agency or lower court." An order is defined as

a "collateral order" if all three of the following requirements are met:

(1) the order is separable from, and collateral to, the main cause of action;

(2) the right involved is too important to be denied review; and

(3) the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa. R.A.P. 313(b); *Adams v. Department of Health,* 967 A.2d 1082 (Pa.Cmwlth.2009). These requirements are stringent and must be narrowly construed. *Adams; Commonwealth v. $1155.00 Cash,* 909 A.2d 12 (Pa.Cmwlth.2006), *appeal denied,* 591 Pa. 737, 921 A.2d 498 (2007).

In reviewing these criteria, we have held that an order is separable if it does not affect the merits of the main cause of action. *Pittsburgh Water and Sewer Authority v. Gladstone,* 999 A.2d 1248 (Pa. Cmwlth.2010). With respect to the second requirement, our Supreme Court has held that it is not sufficient that the issue be important to the particular parties; rather, the issue must involve rights that are "deeply rooted in public policy going beyond the particular litigation at hand." *Geniviva v. Frisk,* 555 Pa. 589, 725 A.2d 1209, 1214 (1999). Finally, we have held that review under Pa.R.A.P. 313 is appropriate if a claim has the potential to be rendered moot as the result of a final judgment. *Pittsburgh Water and Sewer Authority.*

**3.** By order dated July 16, 2013, we directed the parties to address the appealability of the trial court's May 30, 2013 order as a collateral order pursuant to Pa.R.A.P. 313 in their principal briefs on the merits.

**4.** Our review of arbitration awards is one of deference. *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999). Generally, the

award of the arbitrator will be final and binding upon the parties. *Id.* However, this Court may review an arbitration award for the limited purposes of determining whether the arbitrator's award draws its essence from the collective bargaining agreement. *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit #,7 Classroom Assistants Educational Support Personnel Association, PSEA/NEA,* 595 Pa. 648, 939 A.2d 855 (2007).

■ Before this Court, the Municipality raises issues regarding the trial court's purported lack of authority to issue the May 30, 2013 order and whether the trial court applied the proper standard of review to the Arbitrator's award. We agree with the Municipality that these issues are separable from the main cause of action, i.e., whether Rayan's August 5, 2009, letters violated the CBA and whether Flinn and Probo complied with the CBA's residency requirement. Additionally, the resolution of these issues has implications beyond the narrow grievance currently being litigated, questioning the propriety of a common pleas order in a grievance arbitration matter when that common pleas court fails to engage in essence test review. Further, if the May 30, 2013 order is upheld, a new arbitrator could potentially rule differently on each issue already resolved in the Municipality's favor, and the Municipality's right to have limited court review of the original Arbitrator's award will be irreparably lost. Thus, we conclude that the trial court's May 30, 2013 order constitutes an appealable collateral order under Pa.R.A.P. 313(a).

We note that the Union relies on this Court's unpublished decision in *Millcreek Township Water Authority v. Erie City Water Authority*, 2012 WL 8699955 (Pa. Cmwlth., No. 1918 C.D.2011, filed June 27, 2012), wherein we held that an order compelling arbitration is not a collateral order. In *Millcreek Township Water Authority*, we quashed as interlocutory the appeal of the Erie City Water Authority (ECWA) from a common pleas court order compelling the ECWA and the Millcreek Township Water Authority to submit to binding arbitration pursuant to their contracts rather than preside over the matter as a statutory rate dispute. In this case, the parties had already proceeded before the Arbitrator, the Municipality successfully defended virtually all of the issues raised

in the Union's grievance, and the trial court directed that the matter be submitted to a new arbitrator to render a decision on the merits. Because *Millcreek Township Water Authority* is significantly distinguishable from the present case, we conclude that the Union's reliance on that case is misplaced.

Next, the Municipality argues that the trial court lacked the authority to issue the May 30, 2013 order because the Arbitrator's award satisfied the essence test and such an order is not authorized by the UAA. We disagree with both of these arguments.

■ As noted above, the essence test requires a reviewing court to first determine if the issue, as properly defined, is encompassed within the terms of the collective bargaining agreement. *Danville Area School District v. Danville Area Education Association*, 562 Pa. 238, 754 A.2d 1255 (2000). If so, the court will uphold the arbitrator's award so long as the arbitrator's interpretation may be rationally derived from the collective bargaining agreement. *Id.* The Municipality notes that the Union conceded before the trial court that the Arbitrator's award was encompassed within the terms of the CBA. The Municipality argues that the Arbitrator's award, including the 90–day extension, was rationally derived from the express provisions of the CBA. Hence, the Municipality asserts that the trial court should have simply affirmed the Arbitrator's award. Further, the Municipality argues that the trial court's May 30, 2013 order exceeded the court's authority under sections 7313, 7314(a), and 7315 of the UAA, 42 Pa.C.S. §§ 7313, 7314(a), 7315.

■ However, as the Union noted in its brief to this Court, the CBA requires employees to "live" in the Municipality, but contains no standards for determining

what the word "live" means. The Arbitrator did not attempt to define this term, but did reject the Municipality's assertion that an employee can only be considered to be living in the Municipality if he or she can produce a utility bill, property tax bill, or property deed. Indeed, the Arbitrator stated that "[t]he Union is absolutely correct when it states that without a standard for what constitutes living within the Municipality, the grievants have fully complied with what has been accepted for many years as proof of residency without question," (R.R. at 97a), and "without further guidance [Flinn and Probo] cannot now be punished for doing what they thought was their best effort." (R.R. at 100a.) The Arbitrator concluded that the Municipality needed to establish other criteria for establishing proof of residency for non-property owners and proceeded to grant Flinn and Probo an additional 90 days to work towards compliance with these criteria. It is this aspect of the Arbitrator's award that precluded the trial court from reviewing the award under the essence test, especially in light of the previous decisions and orders of the trial court and this Court.

In its March 2, 2011 order, the trial court returned the matter to the Arbitrator "for further proceedings in accordance with her Award." (R.R. at 472a.) In a subsequent opinion dated April 18, 2011, the trial court explained that the terms of the Arbitrator's award, presumably the 90–day extension, necessitated further proceedings. In our December 22, 2011 decision, we further explained that the Arbitrator still needed to determine whether Flinn and Probo complied with the current residency requirements after the expiration of the additional time that was granted or whether Flinn and Probo complied with the new criteria for non-property owners that were being developed by Rayan.

As noted above, section 7313 of the UAA provides that a reviewing court shall confirm an award unless a party sets forth grounds for vacating, modifying, or correcting the same. Section 7314(a)(1) addresses the first ground:

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration)[5] if this subchapter were not applicable;

(ii) there was evident partiality by an arbitrator appointed as a neutral or corruption or misconduct in any of the arbitrators prejudicing the rights of any party;

(iii) the arbitrators exceeded their powers;

(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; or

(v) there was no agreement to arbitrate and the issue of the existence of an agreement to arbitrate was not adversely determined in proceedings under section 7304 (relating to court

---

5. Section 7341 of the UAA, 42 Pa.C.S. § 7341, provides that:

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbi-

tration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

proceedings to compel or stay arbitration) and the applicant-party raised the issue of the existence of an agreement to arbitrate at the hearing.

42 Pa.C.S. § 7314(a)(1).

Section 7315 addresses the remaining grounds:

(a) General rule.—On application to the court made within 30 days after delivery of a copy of the award to the applicant, the court shall modify or correct the award where:

(1) there was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award;

(2) the arbitrators awarded upon a matter not submitted to them and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(3) the award is deficient in a matter of form, not affecting the merits of the controversy.

42 Pa.C.S. § 7315(a)(1)-(3). The Municipality argues that since none of the reasons for vacating, modifying, or correcting the Arbitrator's award were present in this case, the trial court was required to confirm the award.

However, the Municipality ignores section 7305 of the UAA, which states, in pertinent part, that "when an arbitrator appointed fails to act or is unable to act and his successor has not been appointed, the court on application of a party shall appoint one or more arbitrators." 42 Pa. C.S. § 7305. Our Supreme Court recognized the authority granted by section 7305 in *Fastuca v. L.W. Molnar & Associates*, 608 Pa. 187, 10 A.3d 1230 (2011), holding that "[i]f an arbitrator fails to act, a court is specifically empowered to remove the arbitrator and replace him or her." *Id.* at 1248. In the course of this

decision, the Court discussed the finality of an arbitrator's award, stating as follows:

In accord with prior precedent, and the common and accepted meaning of the term award as it is generally used in the context of arbitration proceedings, for an arbitrator's decision to constitute an award ... it must be a ruling by the arbitrator which finally resolves all disputed matters submitted to him or her by the parties and must, therefore, include the arbitrator's decision on all outstanding legal issues, and all necessary factual determinations.

*Id.* at 1241.

The Arbitrator's award in this case did not finally resolve all disputed matters or address all outstanding legal issues. The Arbitrator did not define the term "live" as set forth in the residency requirement of Article 19, Section 8 of the CBA or address whether the information provided by Flinn and Probo was sufficient to meet this requirement. Instead, the Arbitrator provided Flinn and Probo with an additional 90 days to work towards compliance with the residency requirements applicable to non-property owners, requirements which had not yet been established. The trial court directed that the matter be returned to the Arbitrator for further proceedings. As evidenced by her January 26, 2012 letter to counsel, the Arbitrator specifically refused to engage in any such proceedings. Thus, the trial court acted within its authority under section 7305 of the UAA to direct that the matter be submitted to a new arbitrator.

Since the Arbitrator did make findings on certain matters as noted, it is not necessary for the new arbitrator to engage in a hearing concerning all of the issues. Rather, the trial court's May 30, 2013 order should be modified to reflect that the decision of the new arbitrator is limited to resolving the outstanding issues of what it

means to "live" in the Municipality and whether the proof provided by Flinn and Probo was sufficient to meet this requirement. After a decision is rendered on these issues, the entire final award would be subject to essence test review by the trial court.[6]

 Finally, the Municipality argues that the trial court lacked jurisdiction to issue the May 30, 2013 order because the Union never appealed the Arbitrator's January 26, 2012 letter ruling. Once again, we disagree.

The Municipality cites no authority in support of its assertion that the Arbitrator's January 26, 2012 letter constituted a ruling, an order, or an award as that term is defined in *Fastuca*. The letter does not require any further action by the parties nor does it alter the Arbitrator's original award. Instead, the Arbitrator simply reaffirmed her original award, which she described as her "final participation" in the matter, and noted her refusal to engage in any further proceedings as directed by the trial court. (R.R. at 543a.) Thus, the Union's failure to appeal following issuance of this letter did not deprive the trial court of jurisdiction to proceed in the matter.

Accordingly, the order of the trial court is affirmed as modified.

### ORDER

AND NOW, this 27th day of May, 2014, the order of the Court of Common Pleas of Allegheny County, dated May 30, 2013, is affirmed as modified consistent with this opinion.

---

6. We note that counsel for the Municipality acknowledged during argument that new criteria relating to proof of residency for non-property owners have yet to be established. Therefore, it was impossible for Flinn and Probo to work towards compliance with such criteria as directed by the Arbitrator's award.