2022 PA Super 194

| | | |
|---|---|---|
| JOHN W. FOSTER, JR. AND MAUREEN FOSTER, H/W | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ANDREW NUFFER AND BRIANNA CLARK AND COVE HILL, INC. D/B/A HOUSEINSPECT AND COLONIAL REALTY AND PROPERTY MANAGEMENT, LLC, AND VICTOR YOUNG AND PA CONTRATOR, LLC | : | No. 2017 EDA 2021 |
| APPEAL OF: COVE HILL, INC. D/B/A HOUSEINSPECT | : | |

Appeal from the Order Entered September 3, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2017-01162

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

OPINION BY BOWES, J.:                    **FILED NOVEMBER 17, 2022**

Cove Hill, Inc. d/b/a HouseInspect ("Appellant") appeals from the September 3, 2021 order confirming a March 5, 2020 arbitration award and entering a judgment in favor of John W. Foster, Jr. and Maureen Foster (collectively, "the Fosters") for $40,390 with interest.  We affirm.

This controversy stems from the Fosters' purchase of a single-family home located in Plymouth Meeting, Pennsylvania ("the property").  On June 30, 2015, the Fosters entered into an agreement to buy the property from Andrew Nuffer and Brianna Clark (collectively, "the Sellers").  The Sellers'

real estate agent was Victor Young ("Young"), who was an employee of Colonial Realty & Property Management, LLC ("Colonial"). The Fosters hired Appellant to inspect and report upon the condition of the property. After the sale was completed, the Fosters discovered several defects in the property, including a leaky roof, water penetration in the basement, and external flooding that required costly renovations and decreased the property's value. The Fosters contended that Appellant's report did not adequately discuss, discover, or disclose these issues.

The contract between the Fosters and Appellant was executed on July 8, 2015, and mandated that disputes between the parties be submitted to binding arbitration and provided, in pertinent part, as follows:

> **ARBITRATION**: ANY DISPUTE, CONTROVERSY, INTERPRETATION OR CLAIM INCLUDING CLAIMS FOR, BUT NOT LIMITED TO, BREACH OF CONTRACT, ANY FORM OF NEGLIGENCE, FRAUD OR MISREPRESENTATION ARISING OUT OF, FROM OR RELATED TO, THIS CONTRACT OR ARISING OUT OF, FROM OR RELATED TO THE INSPECTION OR INSPECTION REPORT SHALL BE SUBMITTED TO FINAL AND BINDING ARBITRATION UNDER THE RULES AND PROCEDURES OF CONSTRUCTION DISPUTE RESOLUTION SERVICES LLC OF SANTA FE, NM (888 930 0011). THE DECISION OF THE ARBITRATOR(S) APPOINTED THEREUNDER SHALL BE FINAL AND BINDING AND JUDGMENT ON THE AWARD MAY BE ENTERED IN ANY COURT OF COMPETENT JURISDICTION. EACH PARTY SHALL BEAR THEIR OWN COSTS OF ARBITRATION AND SHALL PAY ONE-HALF OF ANY ADMINISTRATIVE COSTS THAT ARE NOT ALLOCATED TO ANY INDIVIDUAL PARTY. AT LEAST ONE ADMINISTRATOR MUST BE FAMILIAR WITH THE HOME INSPECTION PROFESSION. ALL CLAIMS, INCLUDING CLAIMS OF VIOLATION OF THE CONSUMER PROTECTION/FRAUD ACT MUST BE HEARD IN ARBITRATION AND THE CLIENT IS WAIVING THEIR RIGHT TO A JURY TRIAL.
>
> . . . .

**CHOICE OF LAW**: PARTIES AGREE THAT THIS CONTRACT WAS ENTERED INTO IN MEDIA, DELAWARE COUNTY, PENNSYLVANIA AND THAT THE INTERPRETATION OF THIS CONTRACT IS GOVERNED BY PENNSYLVANIA LAW

Appellant's Petition to Transfer, 5/10/18, at Exhibit A ("the Contract"). Thus, the Contract provided for arbitration under the rules and procedures established by Construction Dispute Resolution Services, LLC ("CDRS").

On September 27, 2016, the Fosters filed a request for arbitration with Appellant in connection with these events.[1] Thereafter,

> [t]he arbitrator, Ronald M. Agulnick, Esquire, [("the Arbitrator")] heard testimony from the parties over the course of two days, September 26 and September 27[,] 2019. Oral argument followed on December 19, 2019, and on March 5, 2020[,] the Arbitrator came to the conclusion that [Appellant's] inspection was wholly inadequate, in that it failed to disclose the presence of

---

[1] Contemporaneously to the arbitration, the Fosters filed a civil complaint in January 2017 naming the Sellers, Young, and Colonial as defendants and asserting numerous claims for relief including fraud, detrimental reliance, breach of contract, *respondeat superior*, and various claims under the Real Estate Sellers Disclosure Law and the Unfair Trade Practices and Consumer Protection Law. Thereafter, Colonial and Young filed a *praecipe* to join Appellant as an additional defendant, along with a joinder complaint alleging, *inter alia*, that they were entitled to contribution or indemnity from Appellant with respect to the Fosters' claims. **See** Joinder Complaint, 11/20/17, at ¶ 12. The Sellers also filed crossclaims against Appellant. Upon petition from Appellant, the trial court stayed the matter and transferred the indemnification claims of Colonial and Young to the then-ongoing arbitration proceedings. **See** Order, 12/20/18. Ultimately, the Arbitrator discharged the claims of Young and Colonial "without prejudice should that right arise at a later stage in the [c]ourt [l]itigation to assert such claim." Motion to Confirm Arbitration Award, 10/16/20, at Exhibit B ("Arbitration Award"). In this Court, Young and Colonial filed a joint statement averring they "take no position in the matter before the [C]ourt and will not be filing any brief or memorandum." No Brief Statement, 3/7/22, at 1 (unpaginated). Although listed as appellees, the Sellers have not participated in the instant appeal or otherwise communicated with the Court.

staining, the conditions of the walls in the basement and crawl space, as well as the structural conditions of the roof.

Trial Court Opinion, 11/22/21, at 3. Thus, the Arbitrator entered an award "in favor of [the Fosters] and against [Appellant] in the amount of $40,390 together with interest thereon at 6% from July 8, 2015 to date of payment which shall not be later than 60 days after the date of this award." Motion to Confirm Arbitration Award, 10/16/20, at Exhibit B ("Arbitration Award").

Appellant submitted a request for an internal appeal of the Arbitration Award pursuant to CDRS Rule A25 ("Rule A25"), which provides as follows:

> Appeals may only be filed as allowable by the Federal Arbitration Act [("FAA")]. . . . The appeal process shall be determined by the CDRS Senior Case Administrator as appropriate for each case. The CDRS Senior Case Administrator shall review all claims for appeal and shall determine if the claim merits the appeals process. There shall be an additional fee required for any request for appeal as determined by the CDRS Senior Case Administrator.
>
> (a) If any party feels that the Arbitration Award may be vacated by a court of competent jurisdiction according to section 10 of the [FAA], that party may apply to CDRS to have a second arbitrator decide if the Arbitration Award would be vacated by the court. The decision of the second arbitrator would be through a documents[-]only submission by the parties. If the second arbitrator determines that the Arbitration Award would most likely be vacated by the court, a new arbitration hearing would be arranged by CDRS to be handled by a new arbitrator . . . . The new arbitration would be held only with the agreement of all parties to the arbitration. If a party does not wish to proceed with the new arbitration, the party requesting the arbitration appeal will have the ability to file a case with a court of competent jurisdiction to request that the original Arbitration Award be vacated.

Response in Opposition to Motion to Confirm, 11/14/20, at Exhibit A ("CDRS Rules"). In its request, Appellant asserted, *inter alia*, the Arbitrator's conclusions were not supported by the evidence adduced at the proceedings.

On May 18, 2020, CDRS senior case administrator Peter G. Merrill ("Merrill") responded to Appellant's review request in a letter stating his opinion that there was a "possibility" the Arbitration Award might be overturned on the grounds asserted in Appellant's request for review. Response in Opposition to Motion to Confirm, 11/14/20, at Exhibit B ("Appeal Letter"). Thus, Merrill proposed appointing a second arbitrator, Judith Meyer, Esquire, to conduct the documents-only review contemplated by Rule A25(a).

In his capacity to set appellate limits pursuant to Rule A25, Merrill also emphasized that this proceeding would **not** present an opportunity to re-visit the underlying merits of the Arbitration Award:

> Please keep in mind that the scope of this arbitration is to determine if the previous arbitration award would be vacated by the court according to Section 10 of the [FAA]. **There will be no re-arguing the merits of the case related to the decision of [the Arbitrator] in the prior arbitration award.**

*Id*. (emphasis added). Finally, Merrill also determined that the additional fees incurred by this internal review process would be borne by Appellant, alone.

Appellant objected to being solely responsible for the fees associated with the CDRS appellate process, arguing that the prior agreement of the parties and CDRS's own rules mandated that costs be equally divided amongst the parties. **See** CDRS Rules at A26(a) ("Unless there is a fee structure

specified in the [Contract], all CDRS fees shall be shared equally by the parties although personal expenses such as private attorneys, experts, *etc*. shall be the direct responsibility of the party."); *cf* Rule A25 (providing Merrill, as senior case administrator for CDRS, is empowered to determine the "additional fee" associated with an appeal).

For the next three months, Appellant and Merrill exchanged intransigent emails in which Appellant refused to pay and Merrill declined to alter his allocation determination. On September 15, 2020, Merrill closed the internal CDRS appeal process in consequence of non-payment, as follows:

> As CDRS has not received the payment requested that was due to CDRS on August [3] as originally requested or by September [11] . . ., CDRS has now closed your case related to the appeal process.
>
> Please note that should either party request any additional clarification or information related to the closure of this case, an additional administrative fee and if appropriate, an additional appeal arbitrator fee will be required prior to CDRS or the appeal arbitrator responding to such a request.

Motion to Confirm Arbitration Award, 10/16/20, at Exhibit C ("Closure Letter"). Appellant did not file an additional request with CDRS, or a motion to vacate or modify the Arbitration Award in the court of common pleas.

On October 16, 2020, the Fosters filed a motion to confirm the Arbitration Award pursuant to 42 Pa.C.S. § 7342(b) ("On application of a party made more than 30 days after an award is made by an arbitrator under section 7341 (relating to common law arbitration) the court shall enter an order confirming the award and shall enter a judgment or decree in conformity with

the order."). Appellant responded in opposition, arguing the Arbitration Award was no longer final. *See* Answer to Motion to Confirm, 11/14/20, at ¶ 6 ("It is further DENIED that said purported award is final as an appeal is in progress."). The Fosters retorted the Arbitration Award became final at the closure of CDRS's internal appellate process, *i.e.*, September 15, 2020. On June 3, 2021, the trial court denied the Fosters' petition for confirmation without prejudice. *See* Order and Memorandum, 6/3/21, at 1. In its brief analysis, the trial court seemed to concur with Appellant's position that the Arbitration Award was not final due to Appellant's pursuit, and subsequent abandonment, of CDRS appellate review. *Id*. at 2-4.

The Fosters filed a motion for reconsideration, wherein it attached a new submission from Merrill styled as a "Final Award." Therein, Merrill averred as follows: "As per previous notification to the parties, effective September 15, 2020[,] the above captioned arbitration is closed. The [Arbitration Award] dated March 5, 2020 is final. No further appeals will be considered by the arbitrator or [CDRS]." Motion for Reconsideration, 6/8/21, at Exhibit D ("Final Award Letter"). After holding a hearing, the trial court denied reconsideration.

On July 22, 2021, the Fosters filed a second motion to confirm. By way of new information, they attached an affidavit from Attorney Meyer. Therein, she explained that, as a consequence of Appellant's non-payment of the required fees, she "never reviewed the record on appeal and never made any determination as to whether [the Arbitration Award] might be vacated by a

court under [§] 10 of the FAA." ***See*** Second Motion to Confirm, 7/22/21, at Exhibit F ("Meyer Affidavit").[2]  Appellant responded in opposition, arguing, *inter alia*, "the non-finality of any award by CDRS has already been determined by this Court and is thus *res judicata* and the law of this case." ***See*** Response in Opposition to Second Motion to Confirm, 8/2/21, at ¶ 10.

A different judge was assigned to review the Fosters' second motion to confirm.  On September 3, 2021, the trial court confirmed the Arbitration Award.  Thereafter, the Fosters filed a *praecipe* for a writ of execution and a *praecipe* to reduce the confirmed Arbitration Award to a judgment.  On September 14, 2021, Appellant filed a timely notice of appeal to this Court. The trial court did not direct Appellant to file a concise statement of errors pursuant to Pa.R.A.P. 1925(b), and Appellant did not file one.  The trial court has filed an opinion discussing its reasoning pursuant to Rule 1925(a).

_____

[2]  Appellant asserted that the Meyer Affidavit was hearsay and sought its exclusion during the hearing on the Fosters' second motion to confirm.  The trial court effectively denied this request and referenced the document in its Pa.R.A.P. 1925(a) opinion.  Appellant has raised this issue in its brief to this Court, but its substantive argument spans only one sentence: "The Declaration is clearly hearsay and does not fall under any of the exceptions as detailed in Pa.R.E. 801, *et seq.* and thus should not have been admitted." Appellant's brief at 16.  It is well-established that "[t]he argument portion of an appellate brief must include a pertinent discussion of the particular point raised along with discussion and citation of pertinent authorities." ***In re Estate of Whitley***, 50 A.3d 203, 209 (Pa.Super. 2012).  "Failure to cite relevant legal authority constitutes waiver of the claim on appeal." ***Id***. Instantly, we find Appellant's single passing reference to the Pennsylvania Rules of Evidence inadequate to fulfill this obligation.  This claim is waived.

Appellant has raised a single issue for our consideration: "Did the lower court issue a ruling in contravention of the coordinate jurisdiction and/or law of the case doctrines?" Appellant's brief at 4. The instant matter concerns confirmation of a common law arbitration award under Pennsylvania law.[3] An "order confirming a common law arbitration award will be reversed only for an abuse of discretion or an error of law." **Prudential Property and Cas. Ins. Co. v. Stein**, 683 A.2d 683, 684-85 (Pa.Super. 1996).

Instantly, Appellant's arguments implicate the "coordinate jurisdiction rule," which "commands that upon transfer of a matter between trial judges

_____

[3] The General Assembly has passed legislation winding down common law arbitration in the Commonwealth in favor of the Revised Statutory Arbitration Act, 42 Pa.C.S. §§ 7321.1-.31. Specifically, 42 Pa.C.S. § 7321.4(a) provides these revisions will govern all agreements to arbitrate made on or after July 1, 2019. Those agreements predating July 2019, however, are governed by the Uniform Arbitration Act ("UAA"), 42 Pa.C.S. §§ 7301-20, unless the parties expressly agree otherwise. **See** 42 Pa.C.S. § 7321.4(b)(1)-(2). The underlying agreement to arbitrate in this matter was executed on July 8, 2015. **See** Contract, 7/8/15, at 1-2. Thus, it is governed by the UAA.

Pursuant to the UAA, 42 Pa.C.S. § 7302(a) provides an agreement to arbitrate a controversy "shall be conclusively presumed to be an agreement to arbitrate pursuant to Subchapter B (relating to common law arbitration) unless the agreement to arbitrate is in writing and expressly provides for arbitration pursuant to [the UAA] or any other similar statute[.]" Here, the Contract does not expressly reference the UAA or any other analogous statute. Furthermore, there are no contrary agreements amongst the parties in the certified record. Accordingly, the arbitration in this matter is governed by the common law. **See Bowdren v. Aetna Life and Cas.**, 591 A.2d 751, 753 (Pa.Super. 1991) ("Where the contract . . . does not specify whether statutory or common law arbitration is controlling and where the parties neither expressly nor impliedly agree subsequent to executing the contract that statutory arbitration applies, common law rules of arbitration apply."); **see also** 42 Pa.C.S. §§ 7341-42.

of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge. Simply stated, judges of coordinate jurisdiction should not overrule each other's decisions." *Zane v. Friends Hosp.*, 836 A.2d 25, 29 (Pa. 2003). However, this general prohibition against revisiting the prior holding of a judge of coordinate jurisdiction is "not absolute" and "[d]eparture from the rule is allowed under certain circumstances *Id*. Of particular import to the case at bar, "an exception is permitted where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id*. Our Supreme Court has delineated the rationale behind this particular exception, as follows:

> The purpose for this limited exception is largely self-evident. To accede to a coordinate judge's order that is clearly erroneous would be not only to permit an inequity to work on the party subject to the order, but would allow an action to proceed in the face of almost certain reversal on appellate review. Moreover, the requirement that the prior holding also create a manifest injustice serves as a significant curb on the exception so that it would apply to only those situations in which adhering to the prior holding would be, in essence, plainly intolerable.

*Id*. at 29-30. With these principles in mind, we turn to Appellant's arguments.

Appellant's arguments are straightforward and assert that the second trial judge in this matter violated the coordinate jurisdiction rule by granting the Fosters' second motion to confirm. *See* Appellant's brief at 13-16. According to Appellant, this holding violated the first trial judge's conclusion that the Arbitration Award was not final. Our review reveals that the first trial judge's refusal to confirm the Arbitration Award was palpably erroneous.

Confirmation of common law arbitration awards is governed by § 7342(b), which provides as follows:

> **(b) Confirmation and judgment.**--On application of a party made more than 30 days after an award is made by an arbitrator under section 7341 (relating to common law arbitration), the court shall enter an order confirming the award and shall enter a judgment or decree in conformity with the order.

42 Pa.C.S. § 7342(b). In conformity with this language, confirmation of an award pursuant to § 7342(b) is "**mandatory**" after "thirty days have passed from the setting of the award." *Riley v. Farmers Fire Ins. Co.*, 735 A.2d 124, 130 (Pa.Super. 1999) (emphasis added). This Court has also "consistently interpreted [§] 7342(b) to require that any challenge to the arbitration award be made in an appeal to the Court of Common Pleas, by filing a petition to vacate or modify the arbitration award within [thirty] days of the date of the award." *U.S. Claims, Inc. v. Dougherty*, 914 A.2d 874, 877 (Pa.Super. 2006). Taken together, § 7342(b) has been interpreted "to mean that the trial court is **required** to confirm the [arbitration] award unless the other party has filed a petition to vacate or modify the award within 30 days of the date of the award." *Civan v. Windermere Farms, Inc.*, 180 A.3d 489, 499 (Pa.Super. 2018) (emphasis added).

The first trial judge's holding was predicated upon its conclusion that the Arbitration Award was not sufficiently final for the purposes of confirmation. *See* Order and Memorandum, 6/3/21, at 1-4. In reviewing the veracity of this holding, we must conclude when, and if, the Arbitration Award became

final.  Our Supreme Court has defined such a final award as "a ruling by the arbitrator which finally resolves all disputed matters submitted to him or her by the parties and must, therefore, include the arbitrator's decision on all outstanding legal issues, and all necessary factual determinations." **Fastuca v. L.W. Molnar & Associates**, 10 A.3d 1230, 1241 (Pa. 2011).

When the Arbitration Award was first handed down on March 5, 2020, it clearly constituted a "final" award, in that it fully adjudicated the outstanding legal and factual issues then existing amongst the parties.  **See generally,** Arbitration Award; **Fastuca**, **supra** at 1241.  However, it is equally clear that Appellant's pursuit of an appeal pursuant to Rule A25 temporarily rendered the Arbitration Award non-final.  While the Arbitration Award was putatively under review for potentially fatal flaws, it could not constitute a final award to the extent that these disputed matters remained outstanding.  **See Fastuca**, **supra** at 1241.  Any such dispute was brought to a conclusive end when Merrill closed the arbitration on September 15, 2020.  **See** Closure Letter.  To the extent Appellant takes the position that the appeal process at CDRS was somehow still underway, there is no support for such a conclusion.

Moreover, we find no indication that the mere initiation of the CDRS appellate process somehow vacated the Arbitration Award.  No such order from the Arbitrator, Merrill, or any other person associated with CDRS appears in the certified record.  To the contrary, Merrill's communications indicated that the CDRS appeal process in this matter would leave the merits of the

Arbitration Award untouched. *See* Appeal Letter. Moreover, there was never a determination that the Arbitration Award was actually invalid on any particular ground. Merrill assessed only that there was a sheer "possibility" of such a conclusion. *Id*. But, as a consequence of Appellant's refusal to pay, the appeal never progressed beyond a preliminary stage.[4] The contemplated documents-only review by Attorney Meyer never took place. *See* Meyer Affidavit. The arbitration is fully concluded and without any expectation of it resuming again. *See* Final Award Letter. Upon the conclusion of this process, the Arbitration Award resumed its earlier finality. Based upon the foregoing, we conclude the Arbitration Award became final on September 15, 2020.

Thus, Appellant had thirty days from that date to file a petition to vacate or modify the arbitration award with the trial court. *See Dougherty*, *supra* at 877. Appellant did not do so, and his time in which to act expired on October 15, 2020. On October 16, 2020, the Fosters filed their first motion to confirm the arbitration award. In the absence of a timely petition from Appellant challenging the arbitration award, the first trial judge was mandated to confirm the award pursuant to § 7342(b). *See Civan*, *supra* at 499; *Riley*,

---

[4] CDRS Rule A26(e) provides a mechanism to avoid intractable disputes regarding the payment of fees, providing that "[i]f one of the parties fails to make payment when required, any other party may make the outstanding payment to facilitate the continuation of the arbitration process . . . and may have a cause of action in court against the party who was delinquent in their payment." If Appellant believed the other parties were not paying their "fair share," it had the option to make the disputed payment to ensure the arbitration continued apace and then file a separate cause of action.

*supra* at 130. Instead, the first trial judge considered arguments concerning the validity of the Arbitration Award that Appellant raised in response to the Fosters' first motion to confirm. However, it is well-established that "a challenge to the validity of an arbitration award asserted for the first time in opposition to a petition to confirm is procedurally inadequate to preserve claims for judicial review." *Dougherty*, *supra* at 877.

Thus, the first trial judge should not have even entertained these belated arguments in the first place. Rather, it was empowered only to confirm the award. As the second trial judge reasoned:

> If [Appellant] believed that CDRS stepped out of bounds and exceeded its authority or failed to follow the proper rules[, Appellant] was required to file an appeal to the Court of Common Pleas within [thirty] days of the date the case was closed. [Appellant] received the letter dated September 15, 2020[,] closing the case and never appealed to the [c]ourt.

Trial Court Opinion, 11/22/21, at 6. We agree. Based on the foregoing discussion, we find that the first trial judge erred by refusing to confirm the Arbitration Award pursuant to § 7342(b).

We now consider the second criterion regarding manifest injustice. *See Zane*, *supra* at 33. Here, we believe that allowing the Arbitration Award to remain in its current legal limbo would work a manifest injustice. In addition to the obvious legal and monetary implications that depend upon confirmation of the Arbitration Award, we also bear in mind the long-stayed civil action underlying these matters. Furthermore, given the procedural posture of the Arbitration Award, it may be difficult to obtain sufficient appellate review of

- 14 -

the matter. We find that overlooking the first trial judge's erroneous holding would be intolerable to the extent that it would perpetuate this controversy without cause, inhibit the ability of the parties to reach a final determination of the arbitrable matters, and detract greatly from judicial efficiency. Thus, we find the second requirement has also been satisfied in this case. ***See DiGregorio v. Keystone Health Plan East***, 840 A.2d 361, 371-72 (Pa.Super. 2003) (finding the existence of manifest injustice based upon delay, expense, and the squandering of judicial resources).

Accordingly, we conclude that the exception to the coordinate jurisdiction rule applies here. The second trial judge did not err in granting the Fosters' second motion to confirm but, rather, rectified a manifest injustice worked by the first trial judge's erroneous ruling. We discern no abuse of discretion or error of law in the trial court's confirmation of the Arbitration Award. Indeed, confirmation was mandatory here pursuant to § 7342(b).

Order affirmed. Jurisdiction relinquished. Case remanded.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 11/17/2022*

- 15 -