J-A18016-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

PAIGE MULLEN : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ALISON FIALA-MULLEN :
:
Appellant : No. 3162 EDA 2024

Appeal from the Order Entered October 25, 2024
In the Court of Common Pleas of Chester County Civil Division at No(s):
2024-07893-PF

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED AUGUST 28, 2025**

Alison Fiala-Mullen ("Fiala-Mullen") appeals pro se from the order entered by the Chester County Court of Common Pleas ("trial court") granting the petition filed pursuant to the Protection from Abuse ("PFA") Act[1] by Paige Mullen ("Mullen"), Fiala-Mullen's daughter. The order prohibits Fiala-Mullen from having any contact with Mullen for three years. On appeal, Fiala-Mullen argues, inter alia, that the trial court erred in determining that her actions placed Mullen in reasonable fear of bodily injury. Because we conclude that the record supports the trial court's finding of abuse, we affirm.

On September 5, 2024, Mullen filed a PFA petition against her mother, Fiala-Mullen. Mullen, who was twenty-one years old when she filed the

_____

[1] 23 Pa.C.S. §§ 6101-6122.

petition, alleged that Fiala-Mullen had been harassing her by repeatedly calling her and leaving voicemails from multiple different phone numbers at all hours of the day. *See* PFA Petition, 9/5/2024, ¶ 11. Mullen also accused Fiala-Mullen of stalking her at school and on social media and claimed that she was in physical danger because of her tumultuous upbringing, during which Fiala-Mullen abused her emotionally and physically. *See id.*, Narrative Attachment. The trial court granted a temporary PFA order.

On October 21 and 22, 2024, the trial court held a hearing on Mullen's PFA petition during which both Mullen and Fiala-Mullen testified. Mullen recounted that during her childhood, she had suffered from years of "relentless abuse from [Fiala-Mullen] in every sense of the word, both emotional, verbal, physical, around alcohol use and mood swings and drunk driving and things [she] experienced firsthand[.]" N.T., 10/22/2024, at 42. Mullen also indicated that she, her father, and her two siblings had a PFA order against Fiala-Mullen from 2017 until 2022, and that Fiala-Mullen had been involuntarily hospitalized for psychiatric instability. N.T., 10/21/2024, at 8-10, 32. Mullen further claimed that her mother threatened members of her family with gun violence during her childhood. *Id.* at 26. She stated that she had also previously testified in criminal proceedings against Fiala-Mullen and that she was aware that her mother had been criminally charged with harassment for publicly harassing Mullen's seventeen-year-old brother. *Id.* at 21-22; N.T., 10/22/2024, at 27-28. Mullen indicated that prior to the PFA

hearing, she had not spoken to her mother since 2017, when she and her siblings were removed from her mother's care after Fiala-Mullen threatened to kill herself and harm Mullen's siblings. N.T., 10/21/2024, at 30-31.

Mullen testified that over the past two years she had received anywhere from one to three calls per day from her mother. *Id.* at 16. Mullen presented twenty-one voicemails that she received from Fiala-Mullen. N.T., 10/22/2024, at 11-21. These voicemails came from at least seven different phone numbers that Fiala-Mullen utilized to contact her. N.T., 10/21/2024, at 17. Mullen testified that she never responded to any of her mother's calls or voicemails and blocked the number every time a call from Fiala-Mullen got through to her. *Id.* at 16-18. Mullen stated that she likely received far in excess of twenty-one calls from her mother because Mullen blocked several of Fiala-Mullen's phone numbers and because her mother had left so many voicemails her mailbox became full and she was unable to save, retrieve, or properly track them. *See id.* at 16-18; *see also* N.T., 10/22/2024, at 11-21. She recounted that approximately two or three weeks prior to the hearing, she filed a police report against her mother for harassment, at which point the phone calls from her mother ceased. N.T., 10/21/2024, at 18. Most of the voicemails were Fiala-Mullen letting Mullen know that it is her mom calling and that she loves her. N.T., 10/22/2024, at 5-6. In one of the voicemails, however, Fiala-Mullen accused Mullen of committing perjury when Mullen testified against her in the criminal proceeding. *Id.* at 27-28.

Mullen further testified about two events that directly preceded her filing the PFA petition. *Id.* at 23-28. First, Mullen stated that Fiala-Mullen left her roses and a message on a whiteboard in one of her classrooms at college. *Id.* at 23. Mullen explained that this alarmed her because she had transferred schools, her social media was private, she had no contact with Fiala-Mullen and thus, she did not know how her mother was able to figure out where she was attending school. *Id.* Second, Mullen stated that her voice coach from high school, whom she had not seen or spoken to in several years, contacted her in July 2024 and informed her that a woman purporting to be Mullen's mother had reached out to the voice coach on social media and informed her that Mullen's father was abusive and that the woman needed to get in contact with Mullen immediately. *Id.* at 23-26.

On October 25, 2024, the trial court granted a final PFA order that prohibited Fiala-Mullen from having any contact with Mullen for three years. *See* Trial Court Order, 10/25/2024. Fiala-Mullen filed a motion for reconsideration, which the trial court denied. Fiala-Mullen timely appealed to this Court. Both Fiala-Mullen and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925. She presents the following issues for review:

> 1. Did the trial court err as a matter of law and abuse its discretion when it concluded that there was evidence sufficient to establish a reasonable fear of imminent bodily injury under the Protection from Abuse Act, 23 Pa.C.S. § 6101(a)(2)?

2. Did the trial court err as a matter of law and abuse its discretion when it found that the evidence supported a course of conduct necessary to establish a reasonable fear of bodily injury under the Protection from Abuse Act, 23 Pa.C.S. § 6101(a)(5)?

3. Did the trial court err as a matter of law and abuse its discretion when it considered a prior matter involving [Mullen's] brother in concluding there was abuse under the Protection from Abuse Act, 23 Pa.C.S. § 6101(a)?

Fiala-Mullen's Brief at 6.

We address Fiala-Mullen's first two issues together because they are related. In her first and second issues, Fiala-Mullen argues that the trial court abused its discretion in determining that she abused Mullen under subsections (a)(2) and (a)(5) of section 6102 of the PFA Act, as the evidence does not support the trial court's finding that she placed Mullen in reasonable fear of imminent serious bodily injury ((a)(2)) or that she knowingly engaged in a course of conduct that placed Mullen in reasonable fear of bodily injury ((a)(5)). *See id.* at 9-27; 23 Pa.C.S. § 6102(a)(2), (5). Fiala-Mullen contends that none of her recent contact with Mullen was in any way threatening, as her voicemails and other messages to Mullen were nothing more than expressions of love and support. Fiala-Mullen's Brief at 9-22. She further asserts that there was no evidence that she had previously abused Mullen. *Id.* at 22-27.

We review PFA orders pursuant to the following standard:

In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt,

- 5 -

but only to establish it by a preponderance of the evidence.  A preponderance of the evidence standard is defined as the greater weight of the evidence, i.e., enough to tip a scale slightly.

***E.K. v. J.R.A.***, 237 A.3d 509, 519 (Pa. Super. 2020) (citations, quotation marks, and brackets omitted).  "[W]e review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court."  ***Kaur v. Singh***, 259 A.3d 505, 509 (Pa. Super. 2021).  "Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder."  ***S.G. v. R.G.***, 233 A.3d 903, 907 (Pa. Super. 2020) (citation, quotation marks, and brackets omitted).

"The purpose of the PFA Act is to protect victims of domestic violence from those who perpetrate such abuse, with the primary goal of advance prevention of physical and sexual abuse."  ***E.K.***, 237 A.3d at 519 (quotation marks and citation omitted).  As a finding of abuse under any one section of the PFA Act is sufficient to sustain the PFA order, we will focus our analysis on subsection (a)(5).[2]  Subsection (a)(5) of section 6102 of the PFA Act defines abuse as follows:

The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

* * *

_____

[2] We note that at oral argument, Mullen conceded that there was insufficient evidence to sustain a finding of abuse under section 6102(a)(2).

- 6 -

(5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury. The definition of this paragraph applies only to proceedings commenced under this title and is inapplicable to any criminal prosecutions commenced under Title 18 (relating to crimes and offenses).

23 Pa.C.S. § 6102(a)(5).

Additionally, this Court has held that a trial court may consider past abusive conduct by the defendant against the plaintiff when determining whether to grant a PFA petition. *See Buchhalter v. Buchhalter*, 959 A.2d 1260, 1264 (Pa. Super. 2008). As we explained:

In light of the protective purposes of the act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a protection from abuse order. If the trial court found the testimony to involve events too distant in time to possess great relevance to the case, it could certainly have assigned less weight to the testimony. However, it was not an abuse of discretion for the trial court to hear the evidence. **Past abusive conduct on the appellant's part was a crucial inquiry necessary for entry of a proper order**.

*Id.* (emphasis added, citation omitted); *see also Custer v. Cochran*, 933 A.2d 1050, 1059 n.11 (Pa. Super. 2007) (en banc) (same).

At the hearing on the PFA petition, Mullen stated that over the past two years, she had received approximately one to three calls per day from her mother, none of which Mullen ever answered or returned. N.T., 10/21/2024, at 16. This amounts to approximately 730 to 2,190 unanswered calls by Fiala-Mullen to Mullen. The record supports a finding that Fiala-Mullen knew the

contact was unwanted, as Mullen repeatedly blocked the numbers from calling her, and Fiala-Mullen utilized at least seven different phone numbers to try to get through to Mullen. *Id.* at 16-18.

Of the voicemails Mullen was able to recover, at least one contained a message from Fiala-Mullen that was menacing in nature—she accused Mullen of committing perjury when Mullen testified against her in a criminal proceeding. N.T., 10/21/2024, at 27-28. The record further supports a finding that Mullen likely received far more than twenty-one voicemails from her mother because Mullen's voicemailbox was full and she had received so many voicemails that she was unable to properly track them. *See id.* at 16-18; *see also* N.T., 10/22/2024, at 11-21.

Additionally, despite receiving no response to her unrelenting calls, Fiala-Mullen went to Mullen's college campus—a location Mullen intentionally did not share with Fiala-Mullen—and left flowers for her in one of her classrooms with a message on the classroom whiteboard. N.T., 10/21/2024, at 23-28. She also attempted to use Mullen's high school voice coach, who Fiala-Mullen did not personally know, as a workaround to contact Mullen. *Id.* Notably, Fiala-Mullen did not contest any of this evidence.

Mullen testified that she is afraid Fiala Mullen "is going to show up on my campus or to my house and be violent or bring a gun," and that Fiala-Mullen "used to make threats about me and my dad and my family and bringing guns and shooting people." *Id.* at 26. Mullen indicated that she had

not spoken to her mother since 2017, when she and siblings were removed from her mother's care after Fiala-Mullen threatened to harm them and to kill herself. *Id.* at 30-31. Mullen summarized her experience with Fiala-Mullen as years of "relentless abuse … in every sense of the word, both emotional, verbal, physical[.]" N.T., 10/22/2024, at 42. Mullen also indicated that she, in addition to her father and siblings, had a PFA order against Fiala-Mullen from 2017 until 2022, and that Fiala-Mullen was involuntarily hospitalized for a time for psychiatric instability. N.T., 10/21/2024, at 8-10, 32. Mullen also stated that she was aware that her mother had been criminally charged with harassment for publicly harassing Mullen's seventeen-year-old brother. *Id.* at 21-22; N.T., 10/22/2024, at 27-28.

We conclude that the recent repeated and unwanted contact, in conjunction with Mullen's past experiences with her mother—which included allegations of abuse, her removal from her mother's care, and threats of gun violence—clearly show that Fiala-Mullen engaged in a course of conduct under circumstances that placed Mullen in reasonable fear of bodily injury. *See* 23 Pa.C.S. § 6102(a)(5). Fiala-Mullen employed a pattern of behavior that was not a mother sending messages of love and support to her daughter in an effort to reconnect, as she contends; it was stalking and harassment. Thus, viewing the evidence in the light most favorable to Mullen as the PFA petitioner, we conclude the trial court did not abuse its discretion in finding abuse under section 6102(a)(5).

In her third issue, Fiala-Mullen argues that the trial court abused its discretion in admitting evidence that she was charged with harassment for a 2023 incident in which she chased Mullen's brother in a vehicle. *See* Fiala-Mullen's Brief at 28-32. Fiala-Mullen contends that the incident with Mullen's brother is "wholly unrelated" to the instant PFA petition and thus not relevant to this case. *Id.* Fiala-Mullen further asserts that because Mullen was only aware of the harassment charge against her mother and did not witness the conduct firsthand, Mullen could not testify about the incident at the PFA hearing because the charge against Fiala-Mullen was ultimately dismissed. *Id.* at 29-31.

"Questions concerning the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed on appeal only when a clear abuse of discretion was present." *E.K.*, 237 A.3d at 522-23 (quotation marks and citation omitted). "Evidence is relevant if … (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. A court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

The trial court allowed Mullen to testify regarding her awareness of the harassment charge against Fiala-Mullen relating to an incident with Mullen's brother because "it reasonably speaks to [Fiala-Mullen]'s course of conduct[.]" Trial Court Opinion, 1/21/2025, at 8. We agree, as evidence that Mullen's brother accused Fiala-Mullen of harassment tends to corroborate Mullen's claims that her mother also engaged in harassing conduct with her. On this basis, we conclude that the trial court did not abuse its discretion in determining that the harassment charge against Fiala-Mullen was relevant to the instant matter. **See** Pa.R.E. 401, 402; **see also Miller on Behalf of Walker v. Walker**, 665 A.2d 1252, 1259 (Pa. Super. 1995) ("In light of the protective purposes of the act, it was within the trial court's discretion to hear any relevant evidence that would assist it in its obligation to assess the appellee's entitlement to and need for a protection from abuse order.").

The record also reflects that while the trial court permitted Mullen to testify that she was aware of the harassment charge against Fiala-Mullen, the trial court did not permit Mullen to testify regarding the details of what allegedly took place between her mother and brother because she did not witness it herself. N.T., 10/21/2024, at 19-22. Additionally, at the hearing, Fiala-Mullen conceded that although the charge was eventually dismissed, she had, in fact, been criminally charged in the incident relating to Mullen's brother. **Id.** at 21. Thus, to the extent Mullen's testimony regarding the harassment charge was unfairly prejudicial to Fiala-Mullen, any such prejudice

was mitigated by Fiala-Mullen's own concessions and the trial court's decision to preclude Mullen from testifying regarding the specific details of the incident with her brother that led to her mother being charged with harassment. *See* Pa.R.E. 403.[3] We therefore conclude that the trial court did not abuse its discretion in permitting Mullen's testimony regarding the harassment charge.

Based on the foregoing, we conclude the trial court did not abuse its discretion in finding sufficient evidence of abuse under section 6102(a)(5) or that Mullen's testimony regarding her awareness of the harassment charge against Fiala-Mullen relating to Mullen's brother was relevant and admissible. As Fiala-Mullen is not entitled to relief on any of her issues, we affirm the final PFA order.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/28/2025

---

3 Moreover, we note that Fiala-Mullen cited no authority in support of her claim that Mullen's testimony regarding the harassment charge was inadmissible. *Foster v. Nuffer*, 286 A.3d 279, 284 n.2 (Pa. Super. 2022) ("Failure to cite relevant legal authority constitutes waiver of the claim on appeal.") (citation omitted).